**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNYSLVANIA**

| | |
|---|---|
| JENNIFER CLEMENS, individually and on behalf of all others similarly situated, | Case No. 2:20-cv-03383 |
| Plaintiff, | |
| v. | |
| EXECUPHARM, INC., and PAREXEL INTERNATIONAL CORP. | |
| Defendants. | |

**ORDER**

AND NOW, this _____ day of _____, 2020, after consideration of

Defendants' Motion to Dismiss the Complaint and Memorandum of Law in Support thereof, and

any responses and replies thereto, it is **ORDERED** and **DECREED** that the Motion is

**GRANTED**.  It is further **ORDERED** that the Complaint (ECF No. 1) is dismissed with

prejudice.

BY THE COURT:

_____

**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNYSLVANIA**

| | |
|---|---|
| JENNIFER CLEMENS, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br>v.<br><br>EXECUPHARM, INC., and<br>PAREXEL INTERNATIONAL CORP.<br><br>                    Defendants. | Case No. 2:20-cv-03383 |

## <u>DEFENDANTS' MOTION TO DISMISS THE COMPLAINT</u>

Defendants ExecuPharm, Inc. and Parexel International Corp., by and through their undersigned counsel, move to dismiss the Class Action Complaint (ECF No. 1), with prejudice, for failure to state a claim upon which relief may be granted, pursuant to Federal Rules of Civil Procedure 12(b)(6).  In support of this Motion, Defendants submit the attached Memorandum of Law, which is incorporated in full.

Respectfully submitted this 4th day of September, 2020,

*/s/ Mathieu J. Shapiro*
Mathieu J. Shapiro (PA Bar No. 76266)
Walter W. Cohen (PA Bar No. 12097)
OBERMAYER REBMANN MAXWELL
& HIPPEL LLP
Centre Square West
1500 Market Street, Suite 3400
Philadelphia, PA 19102-2101
Telephone: 215 665-3000
Mathieu.shapiro@obermayer.com
Walter.cohen@obermayer.com

1

Kristine M. Brown (*Pro Hac Vice* forthcoming)
Donald M. Houser *Pro Hac Vice* forthcoming)
Shifali Baliga (*Pro Hac Vice* forthcoming)
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Telephone: (404) 881-7000
Kristy.Brown@alston.com
Donald.Houser@alston.com
Shifali.Baliga@alston.com

*Counsel for Defendants ExecuPharm, Inc. and Parexel International Corp.*

**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNYSLVANIA**

| | |
|---|---|
| JENNIFER CLEMENS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>EXECUPHARM, INC., and PAREXEL INTERNATIONAL CORP.<br><br>Defendants. | Case No. 2:20-cv-03383 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS THE COMPLAINT**

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND ................................................................................................. 3

III.    STANDARD OF REVIEW ................................................................................. 5

IV.     ARGUMENT AND CITATION TO AUTHORITIES ........................................ 5

        A.      Pennsylvania Law Does Not Apply Globally. .......................................... 5

        B.      Plaintiff's Claims Against Parexel Fail. .................................................... 6

        C.      Plaintiff's Negligence Claim Fails (Count I). ........................................... 8

                1.      Plaintiff Does Not Plausibly Allege Defendants Owed Her a Duty
                        to Safeguard Her Information from a Criminal Attack. ..................... 8

                        a.      ExecuPharm Does Not Owe Plaintiff a Duty to Safeguard
                                Her Information. .................................................................... 8

                                (i)     Florida Law Governs Plaintiff's Negligence Claim
                                        Against ExecuPharm. ................................................ 8

                                (ii)    ExecuPharm Does Not Owe Plaintiff a Duty to
                                        Safeguard Her Information from Criminal Theft
                                        Under Florida Law. .................................................... 9

                                (iii)   None of The Other Alleged Sources Gives Rise to a
                                        Duty. ........................................................................ 10

                        b.      Parexel Does Not Owe Plaintiff a Duty to Safeguard Her
                                Information. .......................................................................... 11

                2.      Plaintiff Does Not Plausibly Allege Defendants Owed Her a Duty
                        to Provide Notice of a Criminal Attack. ....................................... 13

        D.      Plaintiff's Negligence *Per Se* Claim Fails (Count II). ........................... 14

        E.      Plaintiff Does Not State Claims for Breach of Contract. .......................... 17

                1.      Plaintiff's Breach of Implied Contract Claim Against Parexel Fails
                        (Count III). .......................................................................... 17

                2.      Plaintiff's Breach of Contract Claims Against ExecuPharm Fail
                        (Counts III and IV) ................................................................. 18

a.      Plaintiff Fails to State a Claim for Breach of Express
        Contract Against ExecuPharm (Count IV). ................................. 18

b.      Plaintiff Fails to State a Claim for Breach of Implied
        Contract Against ExecuPharm (Count III). ................................ 19

        (i)     Plaintiff's Breach of Implied Contract Claim Fails
                for Multiple Reasons. ........................................ 19

        (ii)    Plaintiff's Breach of Implied Contract Claim Fails
                If Her Express Contract Claim Against ExecuPharm
                Survives. .................................................... 20

F.      Plaintiff Does Not State a Claim for Breach of Fiduciary Duty Against
        ExecuPharm (Count V). ................................................. 21

G.      Plaintiff Does Not State a Claim for Breach of Confidence Against
        ExecuPharm (Count VI). ................................................ 22

H.      Plaintiff's Declaratory Judgment Claim Should Be Dismissed (Count VII). ....... 24

V.  CONCLUSION ................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Advanced Exps., LLC v. Seabrook Wallcoverings, Inc.*,
   2019 U.S. Dist. LEXIS 834 (E.D. Pa. Jan. 3, 2019) ................................................20

*Affinity Gaming v. Trustwave Holdings, Inc.*,
   2016 WL 5799300 (D. Nev. Sept. 30, 2016) ..........................................................24

*Airgas, Inc. v. Cravath, Swaine & Moore LLP*,
   2010 U.S. Dist. LEXIS 78F162 (E.D. Pa. Aug. 3, 2010) .......................................21

*Am. Fin. Servs. Ass'n v. FTC.*,
   767 F.2d 957 (D.C. Cir. 1985) ................................................................................16

*Amburgy v. Express Scripts, Inc.*,
   671 F. Supp. 2d 1046 (E.D. Mo. 2009) ...................................................................13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..............................................................................................3, 5

*Atl. Ref. Co. v. FTC.*,
   381 U.S. 357 (1965) ................................................................................................16

*Baer v. Chase*,
   392 F.3d 609 (3d Cir. 2004) ...................................................................................20

*Bd. of Comm'rs v. Klepinger*,
   273 N.E.2d 109 (Ind. Ct. App. 1971) .....................................................................16

*Beaver Valley Power Co. v. Nat'l Eng'g & Contracting Co.*,
   883 F.2d 1210 (3d Cir. 1989) .................................................................................16

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ....................................................................................5, 11, 17

*Brunwasser v. United States*,
   2008 WL 5216253 (W.D. Pa. Dec. 11, 2008) .........................................................20

*Brush v. Miami Beach Healthcare Grp, Ltd.*,
   238 F. Supp. 3d 1359 (S.D. Fla. 2017) ...................................................................17

*Buck v. Endo Pharms., Inc.*,
   2019 U.S. Dist. LEXIS 71974 (E.D. Pa. Apr. 29, 2019) ..........................................7

*Channon v. Tavangar*,
  2019 WL 2766909 (D.N.M. July 2, 2019), *aff'd sub nom.*, No. 19-2192, 2020 WL
  3969250 (10th Cir. July 14, 2020) .........................................................................................19

*Chavarria v. Intergro, Inc.*,
  2019 U.S. Dist. LEXIS 42112 (M.D. Fla. Mar. 15, 2019).........................................................7

*City of Philadelphia v. Beretta U.S.A. Corp.*,
  277 F.3d 415 (3d Cir. 2002)....................................................................................................10

*Clayton's Auto Glass, Inc. v. First Data Corp.*,
  2013 WL 5460872 (E.D.N.Y. Sept. 30, 2013) ...............................................................14, 24

*Cmty. Bank of Trenton v. Schnuck Mkts., Inc.*,
  210 F. Supp. 3d 1022 (S.D. Ill. 2016)......................................................................................11

*Diaz v. Rent-A-Center, Inc.*,
  2004 U.S. Dist. LEXIS 2250 (E.D. Pa. Feb. 6, 2004) ............................................................23

*Dittman v. UPMC*,
  649 Pa. 496, 196 A.3d 1036 (2018) ..........................................................................................8

*Doe v. Wireless Vision South, LLC*,
  2016 U.S. Dist. LEXIS 178790 (S.D. Fla. Dec.23, 2016) ......................................................21

*Eaton v. Cont'l Gen. Ins. Co.*,
  147 F. Supp. 2d 829 (N.D. Ohio 2001).....................................................................................15

*Freedman v. Meldy's, Inc.*,
  587 F. Supp. 658 (E.D. Pa. 1984) ...........................................................................................15

*Gordon v. Chipotle Mexican Grill, Inc.*,
  2018 WL 3653173 (D. Colo. Aug. 1, 2018) .............................................................................16

*Gracey v. Eaker*,
  837 So.2d 348 (Fla. 2002)........................................................................................................21

*Hammersmith v. TIG Ins. Co.*,
  480 F.3d 220 (3d Cir. 2007).......................................................................................................8

*Hammond v. Bank of New York Mellon Corp.*,
  2010 WL 2643307 (S.D.N.Y. June 25, 2010) ...............................................................12, 17

*Harris v. Nationwide Mut. Fire Ins. Co.*,
  367 F. Supp. 3d 768 (M.D. Tenn. 2019)...................................................................................11

*In re Bldg. Materials Corp. of Am. Asphalt Roofing Shingle Prods. Liability Litig.*,
  2013 WL 1316562 (D.S.C. Mar. 27, 2013) .............................................................................24

*In re Brinker Data Incident Litig.*,
   2020 WL 691848 (M.D. Fla. Jan. 27, 2020) ......................................................14, 22, 23, 24

*In re Cmty. Health Sys.*,
   2016 U.S. Dist. LEXIS 123030 (N.D. Ala. Sept. 12, 2016) ....................................................14

*In re Equifax, Inc.*,
   362 F. Supp. 3d 1295 (N.D. Ga. 2019) ...................................................................................19

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
   613 F. Supp. 2d 108 (D. Me. 2009) .........................................................................................13

*In re Sonic Corp. Customer Data Sec. Breach Litig. (Fin. Institutions)*,
   2020 WL 3577341 (N.D. Ohio July 1, 2020) ...................................................................15, 24

*Inman v. Technicolor USA, Inc.*,
   2011 WL 5829024 (W.D. Pa. Nov. 18, 2011) ...........................................................................9

*Johnson v. Carnival Corp.*,
   2007 WL 9624463 (S.D. Fla. Dec. 13, 2007) ..........................................................................16

*Jones v. ABN AMRO Mort. Group, Inc.*,
   551 F. Supp. 2d 400 (E.D. Pa. 2008) ......................................................................................24

*Kamal v. J. Crew Grp., Inc.*,
   918 F.3d 102 (3d Cir. 2019) ..............................................................................................22, 23

*Kingdom 5-KR-41, Ltd. v. Star Cruises PLC*,
   2004 WL 359138 (S.D.N.Y. Feb. 26, 2004) ............................................................................11

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
   313 U.S. 487 (1941) ...................................................................................................................6

*Krottner v. Starbucks Corp.*,
   406 F. App'x. 129 (9th Cir. 2010) ...........................................................................................18

*L.A. Fitness Int'l, LLC v. Mayer*,
   980 So. 2d 550 (Fla. Dist. Ct. App. 2008) ..............................................................................11

*Larson v. Correct Craft, Inc.*,
   537 F. Supp. 2d 1264 (M.D. Fla. 2008) ..................................................................................22

*Living Color Enters., Inc. v. New Era Aquaculture, Ltd.*,
   2015 U.S. Dist. LEXIS 44121 (S.D. Fla. Apr. 3, 2015) .........................................................21

*Longenecker-Wells v. Benecard Servs.*,
   658 F. App'x. 659 (3d Cir. 2016) ............................................................................................18

*Lumax Indus., Inc. v. Aultman*,
543 Pa. 38, 669 A.2d 893 (1995) ........................................................................7

*Lyon v. Caterpillar, Inc.*,
194 F.R.D. 206 (E.D. Pa. 2000) .........................................................................6

*M&G Polymers USA, LLC. v. Tackett*,
574 U.S. 427 (2015) ...........................................................................................18

*Maresca v. Mancall*,
2003 WL 21652170 (E.D. Pa. June 20, 2003) ..................................................15

*McCarthy v. Luzerne Cnty.*,
2011 U.S. Dist. LEXIS 71343 (M.D. Pa. July 1, 2011) .....................................23

*McClelland v. Medtronic, Inc.*,
944 F. Supp. 2d 1193 (M.D. Fla. 2013) .............................................................14

*Mengle v. Goldsmith*,
2011 WL 1058852 (M.D. Fla. Mar. 21, 2011) .....................................................8

*Muniz v. GCA Servs. Grp., Inc.*,
2006 WL 2130735 (M.D. Fla. July 28, 2006) ....................................................23

*Muransky v. Godiva Chocolatier, Inc.*,
922 F.3d 1175 (11th Cir. 2019) .........................................................................22

*NASDAQ OMX PHLX, Inc. v. PennMont Sec.*,
52 A.3d 296 (Pa. Super. 2012) ..........................................................................13

*Neri v. State Farm Fire & Cas. Co.*,
2019 WL 3821538 (E.D. Pa. Aug. 13, 2019) ....................................................25

*Nitterhouse Concrete Prods., Inc., v. Glass, Molders, Pottery, Plastics & Allied Workers Internal Union*,
763 F. App'x 164 (3d Cir. 2019) .......................................................................18

*Nova Fin. Holdings, Inc. v. Bancinsure, Inc.*,
2012 U.S. Dist. LEXIS 53800 (E.D. Pa. Apr. 17, 2012) ...................................25

*Okna Windows v. Diversified Structural Composites*,
2019 U.S. Dist. LEXIS 135651 (E.D. Pa. Aug. 8, 2019) ...................................17

*Panthera Rail Car LLC v. Kasgro Rail Corp.*,
985 F. Supp. 2d 677 (W.D. Pa. 2013) .......................................................5, 6, 8, 9

*Pisciotta v. Old Nat'l Bancorp*,
499 F.3d 629 (7th Cir. 2007) ...............................................................................9

*Polansky v. Trans World Airlines, Inc.*,
   523 F.2d 332 (3d Cir. 1975)................................................................10, 14

*Polonczyk v. Gates*,
   2017 U.S. Dist. LEXIS 45949 (N.D. Fla. Mar. 16, 2017) ......................17

*R.W. v. Manzek*,
   585 Pa. 335, 888 A.2d 740 (2005) ........................................................8

*Riese v. QVC, Inc.*,
   1999 U.S. Dist. LEXIS 3746 (E.D. Pa. Mar. 31, 1999)........................23

*RLFShop, LLC v. Am. Express Co.*,
   2018 WL 4030544 (S.D. Ohio Aug. 23, 2018).....................................12

*Sandoz Pharms. Corp. v. Richardson-Vicks, Inc.*,
   902 F.2d 222 (3d Cir. 1990)................................................................15

*Scott v. Yellon*,
   2013 WL 3802797 (M.D. Fla. July 11, 2013) ......................................7

*Seifert v. Prudential Ins. Co. of Am.*,
   2014 WL 2766546 (E.D. Pa. June 18, 2014) ...................................20, 22

*Sheedy v. Adventist Health System Sunblet Healthcare Corp.*,
   2020 WL 70976 (M.D. Fla. Jan. 7, 2020)............................................20

*Sheldon v. Kettering Health Network*,
   40 N.E.3d 661 (Ohio Ct. App. 2015)...................................................11

*SmithKline Beecham Corp. v. Continental Ins. Co.*,
   2004 WL 1773713 (E.D. Pa. Aug. 4, 2004) ........................................25

*SodexoMAGIC, LLC v. Drexel Univ.*,
   333 F. Supp. 3d 426 (E.D. Pa. 2018) ..................................................19

*Spencer ex rel. Estate of Tate v. Eckman*,
   2005 WL 711511 (E.D. Pa. Mar. 28, 2005)........................................24

*Stephens v. Availity, LLC*,
   Case No. 19-cv-236 (M.D. Fla. Oct. 1, 2019), ECF No. 32 .................22

*Struve v. Payvandi*,
   740 N.W.2d 436 (Iowa Ct. App. 2007)................................................15

*Taggart v. Norwest Mortg., Inc.*,
   2010 WL 11470591 (E.D. Pa. Oct. 21, 2010)......................................13

*Travelers Indem. Co. v. Dammann & Co.*,
     594 F.3d 238 (3d Cir. 2010) ............................................................................... 9

*United States v. Bestfoods*,
     524 U.S. 51 (1998) ............................................................................................ 7

*Wagner v. Anzon, Inc.*,
     684 A.2d 570 (Pa. Super. Ct. 1996) ................................................................ 15

*Wagner v. Samsung Elecs. Am., Inc.*,
     2016 U.S. Dist. LEXIS 171910 (E.D. Pa. Dec. 13, 2016) ................................ 24

*Wasseff v. NIH*,
     2017 WL 495795 (E.D. Pa. Feb. 6, 2017) ................................................. 21, 22

*Wedner v. Unemployment Board*,
     449 Pa. 460, 296 A.2d 792 (1972) .................................................................... 7

*Weinberg v. Advanced Data Processing, Inc.*,
     147 F. Supp. 3d 1359 (S.D. Fla. 2015) ........................................................... 14

*Willingham v. Global Payments, Inc.*,
     2013 WL 440702 (N.D. Ga. Feb. 5, 2013) .................................................. 11, 12

*Yocca v. Pittsburgh Steelers Sports, Inc.*,
     578 Pa. 479 (2004) ......................................................................................... 19

### RULES

Federal Rule of Civil Procedure 12(b)(6) .......................................................... 1, 5, 25

Rule 8 of the Federal Rules of Civil Procedure ......................................................... 7

### STATUTES

73 P.S. § 2308 .......................................................................................................... 13

Fla. Stat. Ann. § 501.171(10) ............................................................................. 10, 13

Section 5 of the FTC Act .................................................................................... passim

### OTHER AUTHORITIES

Joel S. Feldman, *Class Certification Issues for Non–Federal Question Class Actions–Defense Perspective* ....................................................................................... 6

Defendants ExecuPharm, Inc. ("ExecuPharm") and Parexel International Corp. ("Parexel," and collectively with ExecuPharm, "Defendants") respectfully submit this Memorandum of Law in Support of their Motion to Dismiss the Complaint.  Plaintiff Jennifer Clemens ("Plaintiff") asserts a hodgepodge of claims in an attempt to find one that will provide a basis for holding Defendants liable for the criminal attack against ExecuPharm but not one states a plausible claim for relief, and the Class Action Complaint, ECF No. 1 ("Complaint" or "Compl.") should be dismissed in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I.      **INTRODUCTION**

Plaintiff attempts to hold Defendants liable for a third-party criminal cyberattack launched against her former employer (ExecuPharm) by an international hacking group in the midst of the COVID-19 global pandemic (the "Cyberattack").  Plaintiff alleges that ExecuPharm's response to the Cyberattack was inadequate, but acknowledges that ExecuPharm notified her of the Cyberattack within a matter of days, provided her with near real-time updates of the Cyberattack as it learned more facts, recommended steps she could take to mitigate risk, and provided free identity theft and credit monitoring.  Based on the information ExecuPharm provided, Plaintiff took many of the recommended precautions and by doing so appears to have avoided any actual identity theft or misuse of her information.  Plaintiff alleges no such fraudulent use of her information even though the Cyberattack occurred months before she filed the Complaint.

Nonetheless, Plaintiff seeks to impose sweeping liability on ExecuPharm for the criminal attack.  What's more, Plaintiff asserts claims against Parexel based on nothing more than its status as ExecuPharm's corporate parent.  Indeed, Plaintiff does not allege that she had any interaction at all with Parexel, nor does she allege that Parexel possessed or maintained her information or that its network was compromised. Plaintiff's Complaint is a bridge too far and exceeds all bounds of plausibility.  It should be dismissed in its entirety because:

- Plaintiff's negligence claim fails as to both Defendants because there is no common law duty to safeguard data from a criminal attack or to provide notice of a data breach under the applicable law. And without a duty there is no negligence;

- Plaintiff's negligence *per se* claim suffers from numerous defects, including that no court applying any potentially applicable law has ever recognized a negligence *per se* claim based on an alleged violation of Section 5 of the FTC Act;

- Plaintiff does not and cannot allege a plausible implied contract with Parexel because she does not allege any relationship whatsoever between herself and Parexel. As a result, she does not allege a meeting of the minds on any terms of a supposed contract;

- Plaintiff's contract claims against ExecuPharm also fail. Plaintiff does not state a claim for breach of her employment agreement because the provision she seeks to enforce had long-since expired by the time the Cyberattack occurred. Plaintiff's employment agreement bars her claim for breach of any supposed implied contract that existed before or during the course of her employment, and Plaintiff does not allege any facts making it plausible that she reached an implied contract after her employment ended;

- Plaintiff comes up short in her attempt to state claims for breach of fiduciary duty and breach of confidence. Courts routinely dismiss such claims where, as here, the plaintiff alleges nothing more than an employment relationship with the defendant – a far cry from the fiduciary and confidential relationships required to make these claims plausible; and

- Finally, Plaintiff's claim for declaratory relief should be dismissed on numerous grounds, including the fact that declaratory and injunctive relief are equitable remedies, not separate, independent claims.

For each of these reasons and the additional reasons set forth below, the Court should grant Defendants' Motion to Dismiss and dismiss the Complaint in its entirety.

## II.        BACKGROUND[1]

ExecuPharm is a Parexel subsidiary that provides clinical research support to the pharmaceutical industry.  *See* Compl. ¶ 1.  This lawsuit arises out of the Cyberattack, a sophisticated criminal attack against ExecuPharm by the CLOP ransomware group ("CLOP") during the COVID-19 pandemic.  *Id.* ¶¶ 12-14.  Plaintiff alleges that CLOP launched the Cyberattack on or before March 13, 2020 and accessed sensitive information about certain current and former ExecuPharm employees.  *Id.* ¶ 16.  Parexel's systems were not impacted, but the Cyberattack did impact select Parexel personnel whose information was stored on ExecuPharm's network.  *Id.* ¶ 27.  The timing of CLOP's attack appears to be anything but coincidental.  Amid the pandemic, CLOP has stated publicly that it will continue targeting companies in the pharmaceutical industry like ExecuPharm based on its (misplaced) belief that these companies are benefitting from the pandemic.  *Id.* ¶ 31 n.4.  This is despite the fact that companies like ExecuPharm are actively assisting in the development of potential COVID-19 diagnostic devices, therapies, and vaccines.

Upon learning of the Cyberattack, ExecuPharm immediately alerted federal and local law enforcement authorities and launched an investigation.  Compl. ¶¶ 16, 31.  ***Within a matter of days***, ExecuPharm began notifying individuals whose information was potentially impacted so they could take protective measures.  *Id.* ¶¶ 16-27.  Over the course of March and April 2020, ExecuPharm continued providing updated and additional information as it learned more about the

---

[1] Defendants summarize the Complaint's allegations as they must be taken as true for purposes of this Motion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Defendants do not concede the veracity of the Complaint's allegations and reserve their right to contest them if this case proceeds.

Cyberattack, including notifying individuals of the types of data potentially compromised and encouraging individuals to take certain mitigation measures to protect against the possibility of future harm. *Id.* ¶¶ 16-30. ExecuPharm provided complimentary credit monitoring and identity theft protection services to all potentially affected individuals and established a dedicated call center and email address to answer questions. *Id.* ¶¶ 16, 24, 30, 63, 65.

Plaintiff is a former employee of ExecuPharm who alleges her information was impacted by the Cyberattack. Compl. ¶¶ 56-60. Plaintiff alleges that as a condition of her employment, she provided ExecuPharm with her personal and financial information. *Id.* ¶ 57. She further alleges she was "required to execute an employment agreement with ExecuPharm in which the company promised and agreed to take 'appropriate measures' to protect her personal information," and that this obligation continued even after Plaintiff "ended her employment with ExecuPharm in November 2016." *Id.* ¶¶ 58-59. Plaintiff has also sued Parexel, but Plaintiff does not allege any relationship, dealings, or interactions with the company whatsoever. There is no allegation in the Complaint that Plaintiff is a former Parexel employee, that she provided her information to Parexel, or that Parexel had access to or otherwise possessed her information.

Plaintiff does not allege that any of her information has been actually misused as a result of the Cyberattack. Plaintiff does not, for example, allege that she has suffered identity theft or that she has incurred any unauthorized or fraudulent charges. Instead, Plaintiff alleges only that she has expended time and resources guarding against a risk of possible future harm (e.g., monitoring her accounts and purchasing credit monitoring services), that she experienced a delay in accessing her funds due to a security alert that she placed on her financial account, that she has suffered stress and anxiety, and that her information is somehow less valuable as a result of the Cyberattack. *See* Compl. ¶¶ 67-73.

### III.   STANDARD OF REVIEW

Defendants move to dismiss the Complaint for failure to state a claim under Rule 12(b)(6). To survive a Rule 12(b)(6) motion, Plaintiff must plead sufficient allegations "to raise [her] right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  This requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  Although the Court should take the Complaint's factual allegations as true in reviewing Defendants' Motion to Dismiss, it need not accept legal conclusions as true. *Id.*  Plaintiff does not come close to meeting her pleading burden as to either Defendant.

### IV.   ARGUMENT AND CITATION TO AUTHORITIES

#### A.   Pennsylvania Law Does Not Apply Globally.

Plaintiff is wrong that Pennsylvania law applies globally to her claims and those of the putative class. *See* Compl. ¶¶ 111-15.  Plaintiff alleges she entered into an employment agreement with ExecuPharm, not Parexel, and relies on that agreement's choice of law provision. *See* Compl. ¶ 112.  This approach is far too simplistic.  The employment agreement has no bearing on the law applicable to Plaintiff's claims against Parexel, a non-party to her employment agreement with ExecuPharm.  And even as to her claims against ExecuPharm, the employment agreement had long since expired by the time of the Cyberattack, and in any event, it is axiomatic that narrow choice of law provisions like the one in Plaintiff's employment agreement do not sweep in tort claims. *See, e.g.*, *Panthera Rail Car LLC*, 985 F. Supp. 2d at 695 (holding that a contract provision providing that the contract would be "governed by" and "construed in accordance with" Minnesota law did not apply to tort claims).  None of Plaintiff's remaining allegations supports the global application of Pennsylvania law.  Indeed, this Court has repudiated such a "simplistic approach

that ignores state law choice of law principles," explaining that "federal courts unanimously reject plaintiffs' attempt[s] to apply the law of one state in non-federal question class suits." *Lyon v. Caterpillar, Inc.*, 194 F.R.D. 206, 217 (E.D. Pa. 2000) (quoting Joel S. Feldman, *Class Certification Issues for Non–Federal Question Class Actions–Defense Perspective*, 612 PLI/Lit 41, 80 (1999)).  A federal court sitting in diversity must apply the choice of law rules of the forum state.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941).  Pennsylvania uses a "hybrid choice of law approach that combines the governmental interest analysis with the Second Restatement of Conflict's most significant relationship test."  *Panthera Rail Car LLC v. Kasgro Rail Corp.*, 985 F. Supp. 2d 677, 696 (W.D. Pa. 2013) (internal quotations and citation omitted).

Here, Plaintiff's claims implicate the laws of two states:  Pennsylvania, whose law Plaintiff argues applies globally, and Florida, which is Plaintiff's home state and where her alleged injuries occurred, if at all.  *See* Compl. ¶¶ 6, 67-73.  But with the sole exception of Plaintiff's negligence claim against ExecuPharm (see Section IV(C)(1)(a)(i), *infra*), the Court does not need to determine which state's law applies to resolve Defendants' Motion to Dismiss because Plaintiff's claims fail under both Pennsylvania and Florida law for the reasons set forth below.

### B. Plaintiff's Claims Against Parexel Fail.

This litigation arises from the Cyberattack against ExecuPharm *and ExecuPharm only*.  *See* Section II, *supra*.  Plaintiff stretches to seek to hold Parexel liable for the Cyberattack.  Yet as set forth above, the Complaint is entirely bereft of any factual allegations linking Plaintiff and her alleged injuries to Parexel.  For example, Plaintiff does not allege that she provided her information to Parexel, that Parexel possessed or maintained her information, or that Parexel's systems were compromised in the Cyberattack.  In an attempt to mask this missing link, Plaintiff relies almost exclusively on group pleading allegations – lumping Parexel and ExecuPharm together, referring to them collectively as "Defendants," and then making impermissible undifferentiated allegations

concerning "Defendants" generally.  *See Scott v. Yellon*, 2013 WL 3802797, at *1 (M.D. Fla. July 11, 2013) (concluding that "[b]y lumping 'defendants' together" plaintiff violated minimum pleading standard under Rule 8 of the Federal Rules of Civil Procedure).

The only allegation specific to Parexel – that Parexel is liable for the security of ExecuPharm's network because it is ExecuPharm's corporate parent (*see, e.g.*, Compl. ¶ 55) – violates bedrock principles of corporate law.  Simply put, a parent company is not liable for a subsidiary's alleged conduct absent extraordinary circumstances, none of which is alleged here. *See United States v. Bestfoods*, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries.") (citations omitted); *Buck v. Endo Pharms., Inc.*, 2019 U.S. Dist. LEXIS 71974, at *8 (E.D. Pa. Apr. 29, 2019) ("The parent-subsidiary relationship is insufficient to hold [defendant] liable for the acts of its subsidiary.") (Pennsylvania law); *Chavarria v. Intergro, Inc.*, 2019 U.S. Dist. LEXIS 42112, at *10 (M.D. Fla. Mar. 15, 2019) ("[A] parent corporation is not liable for a subsidiary's tort.") (Florida law); *Lumax Indus., Inc. v. Aultman*, 543 Pa. 38, 41–42, 669 A.2d 893, 895 (1995). (A "court must start from the general rule that the corporate entity should be recognized and upheld, unless specific, unusual circumstances call for an exception. . . .  Care should be taken on all occasions to avoid making the entire theory of corporate entity useless." (quoting *Wedner v. Unemployment Board*, 449 Pa. 460, 464, 296 A.2d 792, 794 (1972))).

As set forth in greater detail below, Plaintiff's failure to allege any basis for holding Parexel liable for the Cyberattack against ExecuPharm is a fatal current that flows throughout the Complaint and requires dismissal of each of Plaintiff's claims against Parexel.

C.      **Plaintiff's Negligence Claim Fails (Count I).**

To state a claim for negligence under both Pennsylvania and Florida law, Plaintiff must plausibly allege that Parexel and ExecuPharm each owed Plaintiff a common law duty.  *See Mengle v. Goldsmith*, 2011 WL 1058852, at *4-5 (M.D. Fla. Mar. 21, 2011); *R.W. v. Manzek*, 585 Pa. 335, 346, 888 A.2d 740, 746 (2005).  Plaintiff alleges that Defendants breached two supposed duties: (i) a duty to safeguard her information from the Cyberattack, and (ii) a duty to provide notice of the Cyberattack.  *See* Compl. ¶¶ 117-128.  As set forth below, neither duty exists under the laws potentially applicable to Plaintiff's claims, and without a duty flowing from Defendants to Plaintiff, there can be no negligence.

1.      **Plaintiff Does Not Plausibly Allege Defendants Owed Her a Duty to Safeguard Her Information from a Criminal Attack.**

a.      *ExecuPharm Does Not Owe Plaintiff a Duty to Safeguard Her Information.*

(i)      Florida Law Governs Plaintiff's Negligence Claim Against ExecuPharm.

There is an actual conflict between Pennsylvania and Florida law as to whether a company owes an employee a common law duty to safeguard the employee's data from a criminal attack. The Pennsylvania Supreme Court has recognized such a duty under similar facts, *see Dittman v. UPMC*, 649 Pa. 496, 516, 196 A.3d 1036, 1048 (2018), but no Florida state court has ever held such a duty exists.  *See* Section IV(C)(1)(a)(ii), *infra*.  The Court must therefore conduct a choice-of-law analysis, under which it "weigh[s] each state's contacts on a qualitative scale according to their relation to the policies and interests underlying the particular issue." *Panthera Rail Car LLC*, 985 F. Supp. 2d at 696 (citing *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 231 (3d Cir. 2007)). In performing this analysis, a court considers the four contacts set out in Section 145(2) of the Restatement (Second) of Conflict of Law.  *Id.*  at 699-700.  For tort actions, the relevant contacts

are "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Id.* at 700.  But it is the first contact – the place of the injury – that generally takes precedence. *See Inman v. Technicolor USA, Inc.*, 2011 WL 5829024, at *4 (W.D. Pa. Nov. 18, 2011).  As a result, the applicable law will "usually be the local law of the state where the injury occurred." *Panthera Rail Car LLC*, 985 F. Supp. 2d at 700 (place of injury "represents a contact of substantial significance").  Here, Florida has the most significant relationship to Plaintiff's negligence claim because it is the state of her residence and thus where her alleged injuries were suffered, if at all. Compl. ¶¶ 60-73.  Plaintiff's generalized allegations of harm relate primarily to inconvenience she would have suffered in her home state of Florida, such as time spent contacting credit bureaus and reviewing bank statements and delay accessing her funds.  And she does not allege any facts making it plausible that she incurred these alleged inconveniences in any state other than Florida. *See, e.g.*, Compl. ¶¶ 67-73.  Florida law thus applies to her negligence claim against ExecuPharm.

> (ii)     <u>ExecuPharm Does Not Owe Plaintiff a Duty to Safeguard Her Information from Criminal Theft Under Florida Law.</u>

No Florida state court applying Florida law has ever recognized a common law duty to safeguard information from a criminal cyberattack.  Although there are some federal courts that have reached a different conclusion, this Court should "choose the narrower and more reasonable path" of holding that no such general, common law duty exists "at least until the [Florida] Supreme Court tells us differently." *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 636 (7th Cir. 2007) (citations omitted); *see Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238, 253 (3d Cir. 2010) ("[W]e have exercised restraint in accordance with the well-established principle that where two competing yet sensible interpretations of state law exist, we should opt for the interpretation that

restricts liability, rather than expands it, until the . . . [state supreme court] decides differently.") (quotation and citation omitted); *City of Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415, 421 (3d Cir. 2002) (noting that federal courts must "permit state courts to decide whether and to what extent they will expand state common law" and are constrained to "apply the current law of the jurisdiction, and leave it undisturbed").

That the Court should decline Plaintiff's invitation to create a common law duty in these circumstances is bolstered also by the fact that the Florida Legislature had the opportunity to create a private right of action for such a claim and opted not to do so.  In 2014, the Florida Legislature amended the Florida Information Protection Act of 2014, Fla. Stat. Ann. § 501.171 – Florida's data breach notification statute – to enhance and clarify the requirements on covered entities with respect to data breach victims.  The Legislature could have created a private right of action under that statute or imposed other avenues for private plaintiffs to recover for purported harm arising out of a security incident.  Instead, the Legislature explicitly disclaimed the existence of a private right of action.  *See id*. § 501.171(10) ("No private cause of action.  This section does not establish a private cause of action.").  The Legislature's decision not to create a private right of action critically undermines Plaintiff's attempt to impose a duty here.

(iii) <u>None of The Other Alleged Sources Gives Rise to a Duty.</u>

Plaintiff takes a scattershot approach by pointing to various supposed sources of a duty to safeguard.  None is viable:

- ***The FTC Act and Unidentified Statues and Regulations***: Plaintiff alleges that a duty to safeguard arises from "statutes and regulations such as the FTC Act."  Compl. ¶ 124. But the FTC Act does not provide a private right of action, *Polansky v. Trans World Airlines, Inc.*, 523 F.2d 332, 339 (3d Cir. 1975), and this Court should follow the numerous other courts that have rejected the creation of a common-law duty based on

10

statutes for which Congress declined to create such a right.  *See Cmty. Bank of Trenton v. Schnuck Mkts., Inc.*, 210 F. Supp. 3d 1022, 1041 (S.D. Ill. 2016) (Section 5 of the FTC Act does not support negligence duty); *Sheldon v. Kettering Health Network*, 40 N.E.3d 661, 672 (Ohio Ct. App. 2015) (same for HIPAA); *Harris v. Nationwide Mut. Fire Ins. Co.*, 367 F. Supp. 3d 768, 776 (M.D. Tenn. 2019).  Moreover, Plaintiff's allegations regarding other unidentified "statutes and regulations" (Compl. ¶ 124) amount to nothing more than "labels and conclusions" and do not plausibly allege that a duty exists here. *Twombly*, 550 U.S. at 555.

- **Industry Standards:** Plaintiff also alleges that a duty arises from "industry-standard data security measures." Compl. ¶ 125(d).  But Plaintiff never identifies which industry standards she relies upon or any industry standard that Defendants supposedly violated. *Id.* ¶ 126(e).  Moreover, numerous courts have held that commercial and industry standards do not create a legal duty. *See, e.g.*, *L.A. Fitness Int'l, LLC v. Mayer*, 980 So. 2d 550, 558 (Fla. Dist. Ct. App. 2008); *Willingham v. Global Payments, Inc.*, 2013 WL 440702, at *19 (N.D. Ga. Feb. 5, 2013); *Kingdom 5-KR-41, Ltd. v. Star Cruises PLC*, 2004 WL 359138, at *4 (S.D.N.Y. Feb. 26, 2004).

For each of the reasons above, the Court should dismiss Plaintiff's negligence claim against ExecuPharm for an alleged failure to safeguard her information from the Cyberattack.

> ### b.  *Parexel Does Not Owe Plaintiff a Duty to Safeguard Her Information.*

No choice of law analysis is required to resolve Plaintiff's negligence claim against Parexel for allegedly breaching a duty to safeguard her information because that claim fails regardless of whether Florida or Pennsylvania law applies.  Plaintiff does not allege *any* relationship, dealings, or interactions with Parexel.  She also does not allege that she provided her information to Parexel,

that Parexel possessed or maintained her information, or that Parexel's systems were involved in the Cyberattack.  Plaintiff attempts to manufacture a connection with Parexel by lumping Parexel and ExecuPharm together, referring to them collectively as "Defendants," and then making undifferentiated allegations concerning "Defendants" generally.  But Plaintiff's group pleading allegations do nothing to bridge the gap between her claims and Parexel in light of her express allegations that her employment relationship (along with all other interactions) was with ExecuPharm exclusively.  Compl. ¶¶ 56-66.

No court applying any potentially applicable state's law has found a duty to safeguard information under the facts alleged here.  In fact, even in data breach cases where the defendant suffered the breach, courts have routinely held that the defendant does not owe a duty to the plaintiff if the plaintiff has no relationship with the defendant.  *See, e.g.*, *RLFShop, LLC v. Am. Express Co.*, 2018 WL 4030544, at *4-8 (S.D. Ohio Aug. 23, 2018) (dismissing negligence claims against a defendant with whom plaintiffs had no direct relationship or interactions); *Hammond v. Bank of New York Mellon Corp.*, 2010 WL 2643307, at *9 (S.D.N.Y. June 25, 2010) (no duty where "[n]one of the named Plaintiffs had any direct dealings with Defendant"); *Willingham*, 2013 WL 440702, at *18 ("[C]ourts have found that no duty of care exists in the data breach context where, as here, there is no direct relationship between the plaintiff and the defendant.").  Here, the disconnect between Plaintiff and Parexel is orders of magnitude greater – there is no relationship; Parexel did not possess or maintain Plaintiff's information; and Parexel's systems were not impacted.

Moreover, any argument that Parexel's status as corporate parent of ExecuPharm gives rise to a duty to safeguard information on ExecuPharm's networks must fail.  *See* Compl. ¶ 55. No court applying any potentially law has *ever* found a company owes a duty to the employees of its

12

subsidiary to safeguard their information from a cyberattack based merely on the company's status as the subsidiary's corporate parent.  This is hardly surprising as such as duty would vitiate the fundamental principles of corporate law discussed above in Section IV(B).

      **2.**    **Plaintiff Does Not Plausibly Allege Defendants Owed Her a Duty to Provide Notice of a Criminal Attack.**

No court has ever recognized a common law duty to provide notice of a data breach under either Pennsylvania or Florida law.  Courts that have considered the issue under other states' laws have declined to recognize any such duty – even for entities who were breached.  *See In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 613 F. Supp. 2d 108, 124-25 (D. Me. 2009) (no common law duty to "advise customers of the theft of their data once it occurred. . . ."); *Amburgy v. Express Scripts, Inc.*, 671 F. Supp. 2d 1046, 1055 (E.D. Mo. 2009) (no negligence claim for failure to provide adequate and timely notice of a data breach).  Both Pennsylvania and Florida, moreover, have enacted detailed data breach notification statutes, and both states' statutes *disclaim a private right of action.  See* Fla. Stat. Ann. § 501.171(10) ("**No private cause of action**. This section does not establish a private cause of action.") (emphasis added); 73 P.S. § 2308 ("The [Pennsylvania] Office of Attorney General shall have exclusive authority to bring an action under the Unfair Trade Practices and Consumer Protection Law for a violation of this act."); *Taggart v. Norwest Mortg., Inc.*, 2010 WL 11470591, at *2 (E.D. Pa. Oct. 21, 2010) ("There is no private right of action under . . . [Pennsylvania's data breach notification] statute."); *cf. NASDAQ OMX PHLX, Inc. v. PennMont Sec.*, 52 A.3d 296, 313 (Pa. Super. 2012) ("[I]f Congress failed to authorize a private right of action to enforce a statute, then a party cannot sidestep legislative intent by suing to enforce a contract imposing the same obligations as those set forth in that statute and, by extension, rule or regulation.").  If Plaintiff's negligence claim for breach of a supposed duty to provide notice of the Cyberattack is allowed to proceed, it would not only create new state law,

but it would also circumvent the unequivocal legislative intent that no such claim should exist.  *See McClelland v. Medtronic, Inc.*, 944 F. Supp. 2d 1193, 1200 (M.D. Fla. 2013) (where "no private right of action" exists under a statute, a plaintiff "cannot make an end run around this rule by recasting violations of the [statute] as violations of state common law.") (internal quotation marks and citation omitted).  And as to Parexel, imposing a common law notification duty based merely on its status as ExecuPharm's corporate parent would also violate the black letter corporate law discussed above.  *See* Section IV(B), *supra*.  For all of these reasons, Plaintiff does not state a negligence claim against Defendants for an alleged failure to provide notice of the Cyberattack.

### D.     Plaintiff's Negligence *Per Se* Claim Fails (Count II).

Plaintiff's claim for negligence *per se* based on an alleged violation of the unfair practices prong of Section 5 of the FTC Act ("Section 5") fails for multiple independent reasons.

***First***, no court applying either Florida or Pennsylvania law has recognized a negligence *per se* claim based on an alleged violation of Section 5.  Indeed, the only Florida court that has addressed this claim has rejected it.  *See In re Brinker Data Incident Litig.*, 2020 WL 691848, at *9 (M.D. Fla. Jan. 27, 2020) (dismissing negligence *per se* claim based on an alleged violation of Section 5) (Florida law).

***Second***, Plaintiff's claim fails because Section 5 does not provide a private right of action. *Polansky*, 523 F.2d at 339 (holding Section 5 does not contain a private right of action).  Florida law does not allow a claim for negligence *per se* based on an "alleged violation of a federal statute that does not provide for a private right of action."  *Weinberg v. Advanced Data Processing, Inc.*, 147 F. Supp. 3d 1359, 1365 (S.D. Fla. 2015); *see In re Cmty. Health Sys.*, 2016 U.S. Dist. LEXIS 123030, at *90-91 (N.D. Ala. Sept. 12, 2016) (dismissing Florida plaintiffs' negligence *per se* claim because "the laws of Florida prohibit plaintiffs from pursuing negligence *per se* claims based on statutes that provide no private right of action").  Under Pennsylvania law a violation of a statute

does not support a negligence *per se* claim where the statute is designed "to protect the interests of the public generally, and not to protect the interests of any particular group of individuals." *Maresca v. Mancall*, 2003 WL 21652170, at *5 (E.D. Pa. June 20, 2003).  The indisputable lack of a private right of action under the FTC Act establishes that Section 5 is designed to serve the interest of the public generally and does not support a negligence *per se* claim under Pennsylvania law.  *See Wagner v. Anzon, Inc.*, 684 A.2d 570, 575 (Pa. Super. Ct. 1996) ("There is a close relationship between whether a statute provides a private cause of action and whether it protects an individual harm that would support application of the negligence *per se* doctrine.").  Indeed, to allow a claim for negligence *per se* to proceed based on a violation of Section 5 would run directly counter to Congress' intent and the mountain of authority from courts across the country holding that no private right of action under Section 5 exists.  *See Sandoz Pharms. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 231, (3d Cir. 1990) (FTC Act does not create "an express or implied private right of action"); *Freedman v. Meldy's, Inc.*, 587 F. Supp. 658, 659 (E.D. Pa. 1984) ("[C]ourts have almost uniform[ly] rejected the argument that there is an implied right of action under" the FTC Act) (collecting cases).

**Third**, Plaintiff's claim must also be dismissed because Section 5's unfair practices prong does not create a concrete standard of care "whereby a jury may determine whether there has been a violation of the statute by finding a single issue of fact."  *Eaton v. Cont'l Gen. Ins. Co.*, 147 F. Supp. 2d 829, 833 (N.D. Ohio 2001); *Struve v. Payvandi*, 740 N.W.2d 436, 443 (Iowa Ct. App. 2007); *In re Sonic Corp. Customer Data Sec. Breach Litig. (Fin. Institutions)*, 2020 WL 3577341, at *6 (N.D. Ohio July 1, 2020) ("The Court finds that because the FTC Act Section 5 does not lay out objective standards, it does not support a claim for negligence per se under Oklahoma law.").  A negligence *per se* claim cannot survive "where duties are undefined, or defined only in abstract

or general terms, leaving to the jury the ascertainment and determination or reasonableness and correctness of acts and conduct under the proven conditions and circumstances . . . ." *Bd. of Comm'rs v. Klepinger*, 273 N.E.2d 109, 112 (Ind. Ct. App. 1971); *Johnson v. Carnival Corp.*, 2007 WL 9624463, at *13-14 (S.D. Fla. Dec. 13, 2007) (rejecting negligence *per se* where the federal regulation did not provide for objective standard by which compliance can be measured); *Beaver Valley Power Co. v. Nat'l Eng'g & Contracting Co.*, 883 F.2d 1210, 1222 (3d Cir. 1989) (concluding that Pennsylvania Supreme Court would not find violation of statute as sufficient basis for negligence *per se* where statute did "not describe particular acts that should or should not be done" and was not "any more specific [] than the law of negligence in general").  Section 5's unfair practices prong does not establish a specific and ascertainable standard of conduct but is instead vague and amorphous by design.  Congress "intentionally left development of the term 'unfair' to the [FTC] rather than attempting to define" any specific practices.  *See Atl. Ref. Co. v. FTC.*, 381 U.S. 357, 367 (1965) (citation omitted); *Am. Fin. Servs. Ass'n v. FTC.*, 767 F.2d 957, 969 (D.C. Cir. 1985); *see Gordon v. Chipotle Mexican Grill, Inc.*, 2018 WL 3653173, at *20 (D. Colo. Aug. 1, 2018) (Section 5 too general for negligence *per se* claim under multiple states' laws) (*report and recommendation adopted in relevant part, rejected in part on other grounds*, 344 F. Supp. 3d 1231 (D. Colo. 2018).

**Fourth,** as to Parexel, Defendants have not identified *any* court – state or federal – that has ever recognized a negligence *per se* claim predicated on a parent company's alleged violation of Section 5 by failing to ensure its subsidiary had adequate data security.

For each of these reasons, Count II should be dismissed.

### E.    **Plaintiff Does Not State Claims for Breach of Contract.**

####  1.    **Plaintiff's Breach of Implied Contract Claim Against Parexel Fails (Count III).**

Plaintiff does not plausibly allege a claim for breach of implied contract against Parexel. Nor could she.  Plaintiff alleges no interactions or relationship between herself and Parexel. Without any interaction at all, Plaintiff has not alleged any facts that she reached a meeting of the minds with Parexel on the terms of a contract – an essential element of her breach of implied contract claim under both potentially applicable laws.  *See Okna Windows v. Diversified Structural Composites,* 2019 U.S. Dist. LEXIS 135651, at *15 (E.D. Pa. Aug. 8, 2019) (an agreement must "represent a meeting of the parties' minds on the essential terms of their agreement") (Pennsylvania law); *Polonczyk v. Gates*, 2017 U.S. Dist. LEXIS 45949, at *11-12 (N.D. Fla. Mar. 16, 2017) (dismissing implied contract claim under Florida law where plaintiff "provided no factual allegations that would amount to a 'meeting of the minds' between the parties"); *see Hammond v. Bank of N.Y. Mellon Corp.*, 2010 WL 2643307, at *11 (S.D.N.Y. June 25, 2010) (dismissing breach of implied contract claim where named plaintiffs had no "direct dealings" with defendant and "parties had no relationship . . .").  Instead, undergirding her claim are conclusory allegations grouping "Defendants" together and stating that "Defendants" "implicitly promised and agreed" to safeguard her information.  *See* Compl. ¶ 139.  But these allegations amount to nothing more than a formulaic pleading of "labels and conclusions" that are insufficient to state a claim, particularly in light of Plaintiff's specific allegations that her employment relationship was with ExecuPharm, not Parexel.  *Twombly*, 550 U.S. at 555.

This Court should therefore follow the well-established authority dismissing breach of contract claims in data breach cases where a plaintiff fails to plausibly allege a meeting of the minds or mutual assent with a defendant as to the security of the information or any other material

terms of the alleged contract.  *See Brush v. Miami Beach Healthcare Grp, Ltd.*, 238 F. Supp. 3d 1359, 1369 (S.D. Fla. 2017) (dismissing implied contract claim because "[n]othing in the . . . Complaint gives rise to a factual inference that the Defendants tacitly agreed to secure her personal data in exchange for remuneration") (Florida law); *Longenecker-Wells v. Benecard Servs.*, 658 F. App'x. 659, 662-63 (3d Cir. 2016) (dismissing breach of implied contract claim in data breach case where plaintiffs "failed to plead any facts supporting their contention that an implied contract arose between the parties") (Pennsylvania law); *Krottner v. Starbucks Corp.*, 406 F. App'x. 129, 131 (9th Cir. 2010) (same).  For all of these reasons, Plaintiff's breach of implied contract claim against Parexel should be dismissed.

### 2. Plaintiff's Breach of Contract Claims Against ExecuPharm Fail (Counts III and IV).

#### a. *Plaintiff Fails to State a Claim for Breach of Express Contract Against ExecuPharm (Count IV).*[2]

Plaintiff's claim that ExecuPharm breached the employment agreement's provision that ExecuPharm would take "appropriate measures" to safeguard her information fails for the simple reason that this contract term had expired by the time of Cyberattack.  Plaintiff is a former employee – she "ended her employment with ExecuPharm in November 2016 to pursue another opportunity."  Compl. ¶ 59.  Plaintiff appears to recognize this defect with her claim and thus asserts that the "appropriate measures" term survived after her employment stopped because "ExecuPharm continued to retain" her data.  *Id.*  But this conclusory allegation cannot save her claim because it is black letter law that "contractual obligations [cease] upon termination of" a contract.  *Nitterhouse Concrete Prods., Inc., v. Glass, Molders, Pottery, Plastics & Allied Workers Internal Union*, 763 F. App'x 164, 166 (3d Cir. 2019) (internal quotation marks and citation

---

[2] Plaintiff does not assert Count IV against Parexel.

omitted); *M&G Polymers USA, LLC. v. Tackett*, 574 U.S. 427, 441 (2015) (warning that as a default rule, "courts should not construe ambiguous writings to create lifetime promises").  As a result, Plaintiff's claim for breach of express contract fails and should be dismissed.

> b. *Plaintiff Fails to State a Claim for Breach of Implied Contract Against ExecuPharm (Count III).*

>> (i) Plaintiff's Breach of Implied Contract Claim Fails for Multiple Reasons.

Plaintiff's breach of implied contract claim against ExecuPharm fails for numerous independent reasons.  First, the employment agreement's integration clause precludes any finding that an implied contract existed before or during Plaintiff's employment with ExecuPharm.  *See* Exhibit A at 7-8, Section Q.3.  "The Supreme Court of Pennsylvania has clearly indicated that 'an integration clause which states that a writing is meant to represent the parties' entire agreement,'" like the one here, "is a clear sign that the writing is meant to be just that.'"  *SodexoMAGIC, LLC v. Drexel Univ.*, 333 F. Supp. 3d 426, 451 (E.D. Pa. 2018) (quoting *Yocca v. Pittsburgh Steelers Sports, Inc.*, 578 Pa. 479, 498 (2004)).  This Court should follow the numerous courts which have found that such clauses "preclude[] the assertion of an implied contract claim."  *In re Equifax, Inc.*, 362 F. Supp. 3d 1295, 1332 (N.D. Ga. 2019); *Channon v. Tavangar*, 2019 WL 2766909, at *4 (D.N.M. July 2, 2019), *aff'd sub nom.*, No. 19-2192, 2020 WL 3969250 (10th Cir. July 14, 2020) ("The fact that both express contracts contain merger or integration clauses further supports this conclusion since a merger or integration clause generally precludes parties from asserting there was an implied contract.").  Second, Plaintiff does not allege *any* interactions or dealings with ExecuPharm after her employment ceased (and before the Cyberattack), and without any interactions or dealings whatsoever, Plaintiff has not and cannot plausibly allege that she reached a meeting of the minds or mutual assent on the terms of the purported contract.  *See* Section

IV(E)(1), *supra*.  As a result, Plaintiff fails to state a claim for breach of implied contract before, during, or after her employment, and Count III should therefore be dismissed as to ExecuPharm.

(ii)      <u>Plaintiff's Breach of Implied Contract Claim Fails If Her<br>Express Contract Claim Against ExecuPharm Survives.</u>

If the Court declines to dismiss Plaintiff's claim for breach of her employment agreement (Count IV), it dooms her claim for breach of implied contract against ExecuPharm (Count III) for an additional reason.  Florida and Pennsylvania law reject claims for breach of implied contract where the plaintiff also alleges a written contract "cover[ing] the same subject matter."  *Baer v. Chase*, 392 F.3d 609, 616-17 (3d Cir. 2004); *Advanced Exps., LLC v. Seabrook Wallcoverings, Inc.*, 2019 U.S. Dist. LEXIS 834, at *16 (E.D. Pa. Jan. 3, 2019); *Seifert v. Prudential Ins. Co. of Am.*, 2014 WL 2766546, at *6 (E.D. Pa. June 18, 2014); *Sheedy v. Adventist Health System Sunbelt Healthcare Corp.*, 2020 WL 70976, at *4 (M.D. Fla. Jan. 7, 2020) (Florida law).  The two claims may "coexist only if the terms are different in some form" – "in other words, the implied contract must be entirely unrelated to the express contract."  *Brunwasser v. United States*, 2008 WL 5216253, at *5 (W.D. Pa. Dec. 11, 2008).

Here, even a cursory review of the Complaint shows that Plaintiff's two contract claims are entirely ***related*** – and indeed duplicative.  Specifically, in Count III, Plaintiff alleges ExecuPharm breached an implied contract to "implement and maintain reasonable safeguards" to protect employee data.  Compl. ¶¶ 137-40.  In Count IV, she alleges ExecuPharm breached a written contract (i.e., her employment agreement) in which ExecuPharm allegedly agreed to "take appropriate measures to protect the confidentiality and security of all [employee's] personal data." *Compare* Compl. ¶¶ 137-40, *with* Compl. ¶¶ 143-45.  In no sense could these two contract claims be considered "entirely unrelated," *Baer*, 392 F.3d at 617, and for this additional reason Plaintiff's

20

breach of implied contract claim against ExecuPharm must be dismissed if her claim against ExecuPharm for breach of her employment agreement survives.

**F.**   **Plaintiff Does Not State a Claim for Breach of Fiduciary Duty Against ExecuPharm (Count V).**[3]

Plaintiff's breach of fiduciary duty claim against ExecuPharm – premised entirely on an employer-employee relationship – is legally untenable.  The threshold question for a breach of fiduciary claim is "whether a fiduciary relationship existed between the parties." *Airgas, Inc. v. Cravath, Swaine & Moore LLP*, 2010 U.S. Dist. LEXIS 78F162, at *10 (E.D. Pa. Aug. 3, 2010); *Gracey v. Eaker*, 837 So.2d 348 (Fla. 2002).  An employer-employee relationship is insufficient to establish a fiduciary relationship under both Florida and Pennsylvania law.  *See Wasseff v. NIH*, 2017 WL 495795, at *12 (E.D. Pa. Feb. 6, 2017) (applying Pennsylvania law and concluding: "An employer-employee relationship does not, in and of itself, give rise to a fiduciary relationship."); *Doe v. Wireless Vision South, LLC*, 2016 U.S. Dist. LEXIS 178790, at *12-13 (S.D. Fla. Dec.23, 2016) ("The simple fact of the employer/employee relationship between the Defendant and the Plaintiff does not create a fiduciary relationship.").  Instead, a plaintiff must allege a "'special relationship' between the parties which involves confidentiality, special trust, or fiduciary responsibilities," *Wasseff*, 2017 WL 495795 at *12, or in other words, a "special degree of trust" apart from the normal employer-employee relationship, *Living Color Enters., Inc. v. New Era Aquaculture, Ltd.*, 2015 U.S. Dist. LEXIS 44121, at *17 (S.D. Fla. Apr. 3, 2015).

Plaintiff does not assert any facts plausibly alleging that she had a relationship with ExecuPharm beyond an employment relationship.  In Count V, Plaintiff alleges that "[**a]s their employer**, ExecuPharm occupied a position of advisor or counselor to its employees such that

---

[3] Plaintiff does not assert Count V against Parexel.

ExecuPharm would reasonably inspire confidence that it would act in good faith and in the best interest of the employees."   Compl. ¶ 148 (emphasis added).   Yet "[t]his allegation is merely another way of stating that . . . [ExecuPharm] breached duties owed to Plaintiff arising solely out of the employer-employee relationship" and therefore fails as a matter law to state a claim for breach of a fiduciary relationship.  *Wasseff*, 2017 WL 495795, at *12.  This Court should reject Plaintiff's attempt to re-package her employment relationship with ExecuPharm into a fiduciary relationship and dismiss Count V.  *See id.* at *12 (dismissing breach of fiduciary claim by employee because the plaintiff alleged only an employer-employee relationship); *Seifert*, 2014 WL 2766546, at *8 (same); *Larson v. Correct Craft, Inc.*, 537 F. Supp. 2d 1264, 1269 (M.D. Fla. 2008) ("No reasonable jury could find that a college graduate with more than ten years of experience was so dependent upon his employer that the employer had a fiduciary duty toward him.").

### G.   Plaintiff Does Not State a Claim for Breach of Confidence Against ExecuPharm (Count VI).[4]

As an initial matter, no Florida or Pennsylvania state court has ever recognized a claim for breach of confidence in the data breach context.  And the two Florida federal courts that have addressed this claim have rejected it.  *See Brinker.*, 2020 WL 691848, at *21-22; *Stephens v. Availity, LLC*, Case No. 19-cv-236 (M.D. Fla. Oct. 1, 2019), ECF No. 32, at p. 14.  For this reason alone, Plaintiff's breach of confidence claim against ExecuPharm should be dismissed.

Moreover, Plaintiff does not plausibly allege a confidential relationship with ExecuPharm, a core element of any claim for breach of confidence.  *Kamal v. J. Crew Grp., Inc.*, 918 F.3d 102, 114 (3d Cir. 2019) (defining a breach of confidence as "the unconsented, unprivileged disclosure to a third party of nonpublic information that the defendant has learned within a confidential

---

[4] Plaintiff does not assert Count VI against Parexel.

relationship"); *Muransky v. Godiva Chocolatier, Inc.*, 922 F.3d 1175, 1191 (11th Cir. 2019) (explaining that a "FACTA violation does not involve the kind of traditional confidential relationship that is at issue in a breach of confidence—say, a doctor-patient relationship"). "[A] confidential relationship exists when one person has reposed a special confidence in another to the extent that the parties do not deal with each other on equal terms, either because of overmastering dominance on one side, or weakness, dependence, or justifiable trust on the other." *Riese v. QVC, Inc.*, 1999 U.S. Dist. LEXIS 3746, at *17 (E.D. Pa. Mar. 31, 1999). In addition to alleging the placement of special confidence in another, a plaintiff must also allege a "recognition, acceptance, or undertaking" of this special confidence "on the part of the other party." *Muniz v. GCA Servs. Grp., Inc.*, 2006 WL 2130735, at *10 (M.D. Fla. July 28, 2006). Plaintiff makes no allegations that she placed a type of "special confidence" in ExecuPharm such that a one-sided or unbalanced confidential relationship exists between them or that ExecuPharm acknowledged and undertook such a confidence. The only relationship Plaintiff alleges between herself and ExecuPharm is one of traditional employment, but the mere existence of an employer-employee relationship is insufficient to constitute a confidential relationship. *See McCarthy v. Luzerne Cnty.*, 2011 U.S. Dist. LEXIS 71343, at *9 (M.D. Pa. July 1, 2011) (Under Pennsylvania law, "[e]mployers and employees do not have a fiduciary or confidential relationship."); *Diaz v. Rent-A-Center, Inc.*, 2004 U.S. Dist. LEXIS 2250, at *8-9 (E.D. Pa. Feb. 6, 2004) ("Although the state courts have recognized a 'confidential relationship,' requiring one party to act with the utmost good faith for the benefit of the other party in the areas of fiduciaries and estates, we find no precedent to extend this protection to employer/employee relationship." (internal citation omitted)).

Plaintiff's breach of confidence claim fails for yet another reason. A breach of confidence claim requires a disclosure of information by a defendant, *Kamal*, 918 F.3d at 114, and

ExecuPharm "did not disclose Plaintiff's information."  *Brinker*, 2020 WL 691848, at *22. Information stolen by a third party in a criminal cyberattack does not constitute a "disclosure" on the part of a defendant.  *See id.*  Even where a plaintiff alleges that a defendant's "inadequate security facilitated the theft," that claim lies in negligence, "not breach of confidence."  *Id.*

### H.   Plaintiff's Declaratory Judgment Claim Should Be Dismissed (Count VII).

In Count VII Plaintiff seeks both declaratory and injunctive relief.  This Count should be dismissed for multiple reasons:

**First,** claims for declaratory and injunctive relief are not independent causes of actions or counts; they are remedies.  As a result, courts across the country routinely dismiss exactly these types of claims.  *See Clayton's Auto Glass, Inc. v. First Data Corp.*, 2013 WL 5460872, at *7 (E.D.N.Y. Sept. 30, 2013) (dismissing claim for declaratory relief because "a declaratory judgment is a remedy, not a cause of action); *In re Bldg. Materials Corp. of Am. Asphalt Roofing Shingle Prods. Liability Litig.*, 2013 WL 1316562, at *11 (D.S.C. Mar. 27, 2013) (dismissing claims for declaratory and injunctive relief because they are remedies and not independent causes of action); *Wagner v. Samsung Elecs. Am., Inc.*, 2016 U.S. Dist. LEXIS 171910, at *10-11 (E.D. Pa. Dec. 13, 2016); *Jones v. ABN AMRO Mort. Group, Inc.*, 551 F. Supp. 2d 400, 406 (E.D. Pa. 2008) ("Declaratory judgment is a remedy, not a count."); *Sonic*, 2020 WL 3577341, at *7 (dismissing count for declaratory and injunctive relief because "declaratory judgment is a remedy or the relief sought, rather than an independent cause of action"); *Affinity Gaming v. Trustwave Holdings, Inc.*, 2016 WL 5799300, at *7 (D. Nev. Sept. 30, 2016) ("'Claims' for injunctive or declaratory relief are not proper causes of action. 'Declaratory relief, like injunctive relief, is a remedy, not an underlying substantive claim.'").

**Second,** declaratory and injunctive relief are equitable remedies that "are appropriate only where a plaintiff has no adequate remedy at law."  *Spencer ex rel. Estate of Tate v. Eckman*, 2005

WL 711511, at *4 (E.D. Pa. Mar. 28, 2005).  Plaintiff does not allege – even in conclusory fashion – that she lacks an adequate remedy at law and, for this additional reason, the Count VII should be dismissed.

*Third*, Plaintiff's request for a declaratory judgment should also be dismissed because the relief sought is duplicative of Plaintiff's breach of contract claims.  Specifically, Plaintiff seeks a declaratory judgment that Defendants' "existing data security measures do not comply with their obligations and duties of care." Compl. ¶ 161.  These are the same obligations that that Plaintiff alleges in her breach of contract claims. *Id.* ¶¶ 138-39, 144.  "Federal courts routinely dismiss actions seeking declaratory judgment that, if entered, would be duplicative of a judgment on an underlying breach of contract claim." *Neri v. State Farm Fire & Cas. Co.*, 2019 WL 3821538, at *9 (E.D. Pa. Aug. 13, 2019); *see SmithKline Beecham Corp. v. Continental Ins. Co.*, 2004 WL 1773713, at *1-2 (E.D. Pa. Aug. 4, 2004) (dismissing Pennsylvania declaratory judgment claims where claims were duplicative of breach of contract claims); *Nova Fin. Holdings, Inc. v. Bancinsure, Inc.*, 2012 U.S. Dist. LEXIS 53800, at *11 (E.D. Pa. Apr. 17, 2012) (same).

## V.    CONCLUSION

For the reasons above, Plaintiff fails to state a single plausible claim for relief, and the Court should dismiss the Complaint in its entirety pursuant to Rule 12(b)(6).

Respectfully submitted this 4th day of September, 2020.

*/s/ Mathieu J. Shapiro*
Mathieu J. Shapiro (PA Bar No. 76266)
Walter W. Cohen (PA Bar No. 12097)
OBERMAYER REBMANN MAXWELL
& HIPPEL LLP
Centre Square West
1500 Market Street, Suite 3400
Philadelphia, PA 19102-2101
Telephone: 215 665-3000
Mathieu.shapiro@obermayer.com
Walter.cohen@obermayer.com

Kristine M. Brown (*Pro Hac Vice* forthcoming)
Donald M. Houser *Pro Hac Vice* forthcoming)
Shifali Baliga (*Pro Hac Vice* forthcoming)
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Telephone: (404) 881-7000
Kristy.Brown@alston.com
Donald.Houser@alston.com
Shifali.Baliga@alston.com

*Counsel for Defendants ExecuPharm, Inc. and Parexel International Corp.*

# EXHIBIT A



500 North Gulph Road, Suite 120   T: 610.272.8771   info@execupharm.com
King Of Prussia, PA 19406   F: 610.272.8056   www.execupharm.com

## EMPLOYEE AGREEMENT

This EMPLOYEE AGREEMENT ("Agreement") is made and entered into as of February 29, 2016 by and between EXECUPHARM, INC. (the "Company") and Jennifer Clemens ("Employee"):

## BACKGROUND

WHEREAS, as a condition of Employee's employment, Employee and the Company desire to enter into this Agreement to protect the Company's interests in its proprietary information, trade secrets, and other confidential information relating to the Company and its affiliates while offering Employee the opportunity for employment and setting forth some of the terms of that employment; and

WHEREAS, for the continued success of the Company's business it is essential for the Company and Employee to enter into this Agreement to provide for the protection of the Company's confidential information and customer relationships.

NOW, THEREFORE, and as a condition of employment with the Company, and intending to be legally bound, the Company and Employee hereby agree as follows:

## TERMS

A.   **Nature of Employment**.  Employee hereby agrees and understands that his/her employment is "at will," which means that Employee and the Company may terminate their employment relationship for any lawful reason at any time.  Employee shall provide the Company at least thirty (30) days advance notice of his/her intent to terminate such employment.

B.   **Representations of Employee**.  Employee hereby represents that:

(1)   Employee has the skills and abilities necessary to perform those duties and tasks for which he/she is being hired (as explained to him/her) and that he/she is able and willing to devote the time, energy and efforts needed to perform his/her duties and to act in the best interests of the Company.

(2)   Employee shall be the only person completing the work assigned to him/her.

(3)   Employee shall not share any user name or password provided to him/her or allow any third party access to the confidential or proprietary systems of the Company or the Company's clients.

(4)        Employee does not have a criminal history that has not been disclosed to the Company, as previously requested by the Company.

(5)        Employee may accept his/her employment arrangement with the Company (a) without any conflict with, or violation of, the terms of any agreement with a prior employer by which Employee is bound, and (b) without using the confidential or proprietary information of any third party, which information Employee is strictly prohibited from using while employed by the Company.

**C.      Duties.**  Employee shall serve the Company faithfully and to the best of Employee's ability and shall provide services in a first rate and high quality manner given the nature of the tasks and responsibilities assigned to and undertaken by Employee.  Employee shall comply with all lawful directions and requirements of the Company.

**D.      Power of Employee to Bind Company.**  Employee may not enter into any contract or in any way otherwise attempt to bind the Company with respect to any third party without written authority from the Company.

**E.      Place of Employment.**  Employee's place of work will be determined solely by the Company at its discretion.

**F.      Employee's Hours of Work.**

(1)      Employee's hours of work will vary from week to week, based on the Company's and its clients' needs and the tasks assigned to Employee.  The Company nevertheless presently anticipates, but does not guarantee, that Employee will work approximately 40 hours per week.  Employee shall keep full and accurate records of all hours he/she works by completing on-line timecards in the Company's TMS system.  Such time cards should be completed by the end of the day on Monday for the hours worked the previous week.  Failure to keep accurate and timely time records will subject Employee to discipline and may, in certain circumstances, impact Employee's eligibility for pay.

(2)      Employee may only work more than 40 hours per week if he or she obtains advance approval for such work from the Company.  Failure to obtain such prior approval will subject Employee to discipline and may, in certain circumstances, impact Employee's eligibility for pay.

    **G.**    <u>**Compensation of Employee.**</u>  The Company shall pay Employee based on an hourly rate of ██████ per hour.  The Company, upon authorization by Employee, shall make direct deposit payments to Employee's selected bank account, such payments to be made on or about the 15th and 30th of each month or at such other times as the Company makes payroll payments.  The Company makes no warranty as to when directly deposited funds will be available, as each banking institution may have different policies taking into consideration factors such as holidays.  All payments made to Employee shall be subject to deductions and withholdings as authorized by Employee or required by applicable law.

    **H.**    <u>**Employee Benefits/Time Off From Work**</u>.  Employee shall have such benefits as the Company provides to its employees, as such benefits may be changed, added, or cancelled over time in the Company's sole discretion.  Such benefits presently include the following time off from work:

    (1)    Paid Time Off (PTO) – PTO may be used for any reason, including vacation, sickness or other personal reasons upon advance request by Employee pursuant to applicable Company policy.  Employee's PTO entitlement is also applied to all Company holidays.  Employee shall initially be provided ██████████ paid PTO hours on an annual basis.  Employee accrues PTO at a rate of ████ hours a day, and, except in exceptional circumstances and with advance approval, Employee may not take PTO days that have not yet accrued.  Accrued PTO may be carried over from year-to-year at the discretion of the Company (unless the law requires otherwise), but may not be cashed in for additional compensation.  Accrued, unused PTO time will be paid out upon Employee's separation, and any "negative" PTO (i.e., PTO time used in excess of Employee's entitlement) shall be offset against Employee's final paycheck.

    (2)    Leaves of Absence – The Company provides leave as required by the Family and Medical Leave Act ("FMLA") and analogous state laws.  The Company may also consider requests for other, unpaid leaves of absence under certain situations.  Further information concerning FMLA and other available leaves is provided in the Company's Workplace Guidelines.

    **I.**    <u>**Employee Expenses.**</u> The Company shall reimburse Employee for reasonable expenses (other than home office-related expenses) that he or she incurs in the course of his/her employment with Company, but only if Company approves Employee incurring such expenses in advance.  <u>Expenses shall always require advance approval of the Company, and the Company reserves the right not to reimburse Employee for expenses incurred without advance approval</u>.  Once Employee incurs approved expenses, Employee shall submit to the Company an itemized statement of such expenses along with copies of all bills and receipts.  Employee must submit all expense documentation no later than the end of day each Monday for expenses incurred the previous week or the Company may deem the expenses ineligible for reimbursement.  The Company reserves the right to require further explanations from Employee about any expenses incurred.  Approved reimbursements will be made in a timely manner, usually within thirty (30) days after receipt of all necessary documentation.

**J.**     **Personal Data.**  Employee consents to the lawful collection, storing and processing of personal data of Employee.  Such personal data may be processed and stored in internal databases that may be accessible from other areas and other countries.  The personal data may be used to administer and manage matters relating to this Agreement and in order to comply with any potential applicable regulatory requirements.  The Company may transfer such personal data, consistent with applicable law, to any of its affiliates, representatives, contractors or other individuals it deems appropriate.  Company will take appropriate measures to protect the confidentiality and security of all personal data.

**K.**     **Confidentiality.**

(1)     Employee acknowledges that, through his/her employment with the Company, he/she will be exposed to and gain information concerning the Company, and the Company's clients and business partners, including Confidential Information (as defined below), and that if Employee improperly disclosed such information or did not maintain it as confidential, it would cause immediate, substantial and irreparable harm to the Company, and/or its clients and business partners.

(2)     Employee agrees that all documents, files, records, data, electronic communication and other written or tangible material containing Confidential Information provided to Employee or otherwise obtained by him/her in the course of his/her employment with the Company, whether created by Employee or others, are the exclusive property of the Company or its clients or business partners, as may be applicable, and are to be used by Employee only in the performance of his/her duties for the Company.  All such materials and property of the Company, its clients and business partners (and copies thereof) in the possession of Employee shall be delivered to the Company upon termination of employment with the Company, regardless of the reason for such termination, or at such earlier time as the Company may request.  Additionally, in the event that Employee maintains Confidential Information on any personal items, such as a personal computer or storage device, Employee agrees to make such item(s) available for inspection by Company, and removal of any Confidential Information, upon Company's request or at time of assignment termination.

(3)     Except if Employee is legally compelled under applicable law to make such disclosure and as necessary for his or her employment hereunder, Employee shall, both during and at all times after his/her employment with the Company, keep strictly confidential and not directly or indirectly publish, disclose, disseminate or divulge to any person or entity, or use for his/her own benefit or the benefit of any person or entity other than the Company, any of the Confidential Information that he/she obtains directly or indirectly from the Company, or obtains during the course of his/her employment with the Company, regardless of the source of the Confidential Information.  All obligations hereunder to maintain the confidentiality of Confidential Information are in addition to, and not in limitation of, any other obligations that may arise under applicable law or in other agreement(s) between Employee and the Company or its clients.

(4)     For purposes of this Agreement, "Confidential Information" means all types of financial, business, personnel, technical, economic, and engineering data and information; intellectual property; scientific development, ideas, know-how, inventions, knowledge and results; strategies, plans, and forecasts; systems, processes and procedures; formulas, designs, techniques and methods; technologies; software and hardware; research results and related data; product information; specifications; compilations; computer programs; new product development and prototypes; contracts; records, manuals and policies; business, marketing and sales plans; operational details and information; information concerning actual and potential clients; and any other confidential business information of the Company and its clients and business partners, whether in oral, written, electronic or other form.  Notwithstanding the foregoing, the following does not constitute Confidential Information for purposes of this Agreement: (a) information that is or becomes publicly available other than as a result of a disclosure by Employee, and (b) information that becomes available to Employee on a non-confidential basis from a source other than the Company or a representative of the Company if Employee has no reason to believe that such source is subject to any prohibition against transmitting the information to Employee or is bound by a confidentiality agreement with the Company.

L.     **Covenant Not To Compete.**

(1)     Employee acknowledges that, through his/her employment with the Company, he/she will be exposed to and gain information concerning the Company and its operations, including the Confidential Information described above, will have direct contact with clients and will develop client goodwill and relationships on behalf of the Company.  If Employee used such information and/or contacts, among other things, to compete with or assist another company or entity in competing with the Company with respect to such clients, it would cause immediate, substantial and irreparable harm to the Company.

(2)     Employee therefore agrees and covenants that Employee shall not, while employed by Company and for a period of six (6) months after the termination of his/her employment (regardless of the reason for such termination and whether caused by the Company or Employee), for the purpose or with the effect of providing Competitive Services (as defined below), directly or indirectly, (a) engage, attempt to engage, become employed by, perform services for, or solicit any Assigned Client (as defined below), or (b) assist any entity or individual (other than the Company) to solicit, perform services for, or engage in any way any Assigned Client, including as an employee, partner, associate, manager, agent, consultant or advisor of such individual or entity. For purposes of this Agreement, an "Assigned Client" means any business or entity to which, while employed by the Company, Employee has been assigned, provided services, or placed to work by Company, either directly or through another outsourcing or third party company.  "Competitive Services" means products or services that compete with or are similar to the products or services that the Company provided to an Assigned Client.

M.     **Proprietary Property**

(1)     Employee shall promptly and fully disclose to the Company all proprietary property, which (without limiting the foregoing) includes ideas, concepts, discoveries, inventions, trade secrets, know how, computer software, writings, mask works, processes, technical data, and/or improvements in such property, whether patentable or not, made, created, or conceived by Employee, solely or jointly with others, whether or not during regular business hours, during his/her employment with the Company and (a) along the line of the businesses of the Company, (b) made, created, or conceived using the Company's facilities, supplies, information, trade secrets, or time, or (c) resulting from or suggested by any work Employee has done or may do for the Company or at the Company's request (collectively, "Proprietary Property").

(2)     Employee shall assign and hereby does assign to the Company his/her entire right, title, and interest in all Proprietary Property described in the previous paragraph and in all patent applications, patents, copyrights, trademarks, trade secrets, and know-how covering such Proprietary Property.  Any copyrightable Proprietary Property shall be considered a "work made for hire" under the copyright laws of the United States or the applicable country, so that the Company will be the exclusive owner of any and all copyrights in such property.

(3)     Employee shall, during and after his/her employment with the Company, assist the Company, at its expense, in obtaining and enforcing any legal rights in the Proprietary Property assigned to the Company by the Employee, and Employee shall further assist the Company, at its expense, in obtaining and enforcing any legal rights in Proprietary Property that is owned or enforceable by the Company or has been entrusted to the Company by a third party.

(4)     Employee agrees to keep and maintain adequate and current written records of all Proprietary Property made, created, or conceived by him/her (solely or jointly with others) during the term of his/her employment with the Company.  The records will be in the form of notes, sketches, drawings, and any other format that may be specified by the Company. The records will be available to and remain the sole property of the Company at all times.

(5)     This Agreement shall not prejudice any ownership rights Employee had prior to his/her employment with the Company and now has in the inventions described in full in the attached records of invention, each signed and dated by Employee.  If Employee is attaching one or more records of invention, Employee has inserted the number of attachments and his/her initials in the following:  Number of attached records of invention: _____, and Employee's initials:  _____

**N.**     **Reasonableness of Restriction/Injunctive Relief.**

(1)     Employee represents to the Company that enforcement of the restrictions set forth above would not be unduly burdensome to him/her.  The Company and Employee acknowledge and agree that the restrictions set forth in this Agreement are reasonable and do not impose a greater restraint than is necessary to protect the Company's legitimate business interests.

(2)      Employee and the Company acknowledge and agree that any breach or threatened breach of this Agreement, including Sections K through M, may cause irreparable and continuing harm to the Company for which there will be no adequate remedy at law and which could not be adequately compensated by monetary damages.  Accordingly, Employee and the Company expressly agree that, in addition to any other remedies that the Company may have at law or in equity, the Company shall be entitled to injunctive relief for any breach or threatened or anticipated breach by Employee.

(3)      In the event Employee breaches Section L of this Agreement, the time periods set forth in that Section shall be extended by the amount of time that Employee is in breach.

**O.**      **Remedies for Breach of Contract.**  In the event of the breach of any provision of the contract by Employee, in addition to the injunctive relief provided above and all other remedies available at law or in equity, the Company shall be permitted to recover all damages demonstrated as a result of Employee's breach of contract, all profits earned by Employee by virtue of his/her breach, and all attorneys' fees and costs the Company expended in pursuit of any successful action against Employee.

**P.**      **Governing Law.**  This Agreement shall be governed by the laws of the Commonwealth of Pennsylvania, and any action brought under or pertaining to this Agreement or Employee's employment shall be brought exclusively in the Pennsylvania Court of Common Pleas for Montgomery County or the United States District Court for the Eastern District of Pennsylvania.  The Company and Employee submit to the exclusive jurisdiction of such courts.

**Q.**      **Miscellaneous**

(1)      Return of Equipment.  Employee may be furnished with a laptop computer or other valuable work tools in connection with his/her employment.  Employee agrees to return all such equipment, including any computer, on or before his/her last day of employment.  It is the sole responsibility of Employee to ensure that said equipment is returned to the Company.  Reasonable costs associated with the return of such equipment, such as shipping and guaranteed delivery costs, shall be reimbursed to Employee.  *Should Employee fail to abide by this duty, Employee is specifically authorizing the Company, consistent with applicable law, to withhold an amount that, in the Company's reasonable judgment, approximates the value of any equipment retained, until Employee returns such equipment.*

(2)      Assignment and Benefit.  The Company may assign this Agreement in whole or in part to any person, firm, corporation or other legal entity that becomes a successor in interest (by purchase of its assets or by merger or otherwise) to the Company.  Employee may not assign this Agreement.

(3)      Entire Agreement.  Subject to the last sentence of Section K.3 above, this Agreement constitutes the entire agreement between the parties with respect to the matters

contemplated herein and supersedes all prior agreements and understandings with respect thereto.  Any amendment, modification, or waiver of this Agreement shall not be effective unless in writing signed by Employee and a qualified representative of the Company.  This Agreement shall be construed according to its fair meaning, the language used shall be deemed the language chosen by the parties hereto to express their mutual intent, and no presumption or rule of strict construction will be applied against any party to this Agreement.

(4)     Modification.  If any provision of this Agreement is determined to be invalid or unenforceable by a court of competent jurisdiction by reason of the nature of the covenants contained therein, such terms shall be deemed changed or reduced to enforceable terms, but only to the extent necessary to cure such invalidity.  Further, whenever possible, each provision of this Agreement shall be interpreted in such a manner to be effective and valid under applicable law.

(5)     No Waiver.  No failure or delay of the Company to exercise any right, remedy, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such right, remedy, power or privilege preclude any other or further exercise thereof or the exercise of any other right.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date written on the first page.


_____          2-18-16
S. Stephen Porrecca                                      Date
Chief Operating Officer
ExecuPharm, Inc.


_____          2/12/16
Jennifer Clemens                                        Date

### Certificate of Service

I hereby certify that on this 4th day of September, 2020, a copy of the foregoing Motion to Dismiss and accompanying documents was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

Dated: September 4, 2020.

*/s/ Mathieu J. Shapiro*
Mathieu J. Shapiro (PA Bar No. 76266)
Walter W. Cohen (PA Bar No. 12097)
OBERMAYER REBMANN MAXWELL
& HIPPEL LLP
Centre Square West
1500 Market Street, Suite 3400
Philadelphia, PA 19102-2101
Telephone: 215 665-3000
Mathieu.shapiro@obermayer.com
Walter.cohen@obermayer.com

*Counsel for Defendants ExecuPharm, Inc. and Parexel International Corp.*