IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JENNIFER CLEMENS, individually and on behalf of all other similarly situated, | |
| *Plaintiff,* | CIVIL ACTION |
| v. | NO. 20-3383 |
| EXECUPHARM, INC. and PARAXEL INTERNATIONAL CORP., | |
| *Defendants.* | |

**PAPPERT, J.**                                                                                                                                                                                         **January 18, 2024**

<u>**MEMORANDUM**</u>

        The Court discussed this case's factual background in a prior opinion. (ECF No. 41.) In summary, Jennifer Clemens, individually and on behalf of a purported class, sued ExecuPharm, Inc. and parent Paraxel International Corporation over a data breach at ExecuPharm, alleging negligence, negligence *per se*, breach of implied contract, breach of contract, breach of fiduciary duty and breach of confidence. (ECF Nos. 1, 49.) She also sought a declaratory judgment that Defendants' existing security measures fail to comply with their duty of care and an instruction that Defendants implement and maintain industry-standard data security measures going forward. (*Id.*) The Court previously dismissed without prejudice all claims against Paraxel, as well as Clemens's negligence *per se*, breach of fiduciary duty and breach of confidence claims against ExecuPharm. (ECF Nos. 41, 42.)

        Clemens filed an amended complaint against ExecuPharm alone, (ECF No. 49), which now moves to dismiss Clemens's breach of fiduciary duty (Count IV) and breach

of confidence (Count V) claims.  For the reasons that follow, the Court grants the motion and dismisses both claims with prejudice.

I

To avoid dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain facts sufficient to state a claim that is facially "plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim has facial plausibility when the facts pleaded permit a court to make the reasonable inference that the defendant is liable for the alleged misconduct.  *Id.*  The "mere possibility of misconduct" is not enough; the complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"  *Id.* at 678-79 (quoting *Twombly*, 550 U.S. at 570).

Determining plausibility is a "context-specific task" requiring a court to use its "judicial experience and common sense." *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (quotations omitted).  In making this determination, the court assumes well-pleaded facts are true, construes those facts in the light most favorable to the plaintiff, and draws reasonable inferences from them.  *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016).  However, "conclusory assertions of fact and legal conclusions" are not entitled to the presumption of truth.  *Schuchardt*, 839 F.3d at 347.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  And a pleading that offers "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).

II

A

The Court previously dismissed Clemens's claim for breach of fiduciary duty because she failed to allege circumstances distinguishing her relationship with ExecuPharm from any other employer-employee relationship. *Clemens v. ExecuPharm, Inc.*, No. 20-3383, 2023 WL 4139021, 2023 U.S. Dist. LEXIS 107801, at *14-16 (E.D. Pa. June 22, 2023). The Amended Complaint has the same shortcoming. Rather than alleging new facts which could establish the requisite relationship, Clemens relabels and recharacterizes her prior allegations, in conclusory fashion.

A fiduciary duty is "the highest duty implied by law." *Yenchi v. Amerirprise Fin., Inc.*, 161 A.3d 811, 819 (Pa. 2017). To state a claim for violation of a fiduciary duty or confidential relationship, plaintiffs must show such a relationship existed. *Harold ex rel. Harold v. McGann*, 406 F. Supp. 2d 562, 571 (E.D. Pa. 2005). The relationship's existence is "[t]he fundamental element to establish a breach of a fiduciary duty." *Conquest v. WMC Mortg. Co.*, 247 F. Supp. 3d 618, 634 (E.D. Pa. 2017); *see also eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 22 (Pa. Super. Ct. 2002).

A fiduciary duty can arise in two ways, the first as a matter of law. *Yenchi*, 161 A.3d at 820. Common examples here include "[p]rincipal and agent, trustee and [beneficiary], attorney and client, guardian and ward[] and partners." *Id.* But an employer-employee relationship, without more, does not give rise to a fiduciary duty. *Wasseff v. NIH*, No. 16-703, 2017 WL 495795, 2017 U.S. Dist. LEXIS 17221, at *33-34 (E.D. Pa. Feb. 6, 2017) (quoting *United States v. Kensington Hosp.*, 760 F. Supp. 1120, 1133 (E.D. Pa. 1991).

If not as a matter of law, a fiduciary duty may still exist as a matter of fact. *Yenchi*, 161 A.3d at 820. Fact-based fiduciary duties arise out of "confidential" or "fiduciary relationships." *Id.* at 817, 820-21; *see also Basile v. H & R Block, Inc.*, 777 A.2d 95, 102 (Pa. Super. Ct. 2001). In Pennsylvania, these two terms are used interchangeably. *Yenchi*, 161 A.2d at 817 n.5; *Laidlaw v. Midatlantic Converge Worldwide*, 66 Pa. D. & C.5th 358, 392 n.12 (Pa. Ct. Comm. Pl. 2017) ("Because the existence of a confidential relationship is one basis for a fiduciary duty, Pennsylvania courts have for decades used the terms 'fiduciary relationship' and 'confidential relationship' interchangeably").

What determines whether a relationship is confidential "cannot be reduced to a particular set of facts or circumstances." *Yenchi*, 161 A.3d at 820. Although cases involving confidential relationships are "necessarily fact specific, they usually involve some special vulnerability in one person that creates a unique opportunity for another person to take advantage to their benefit." *Id.* at 821. The Pennsylvania Supreme Court "has focused, consistently, on the disparity in position between the parties to determine whether their relationship is, in fact, confidential." *Basile*, 777 A.2d at 102. Such a relationship exists when "the circumstances make it certain the parties do not deal on equal terms, but, on the one side there is an overmastering influence, *or*, on the other, weakness, dependence or trust, justifiably reposed." *Id.* at 101 (quotation omitted).

Business transactions can only give rise to confidential relationships "if one party surrenders substantial control over some portion of [their] affairs to the other." *Yenchi*, 161 A.3d at 823 (quoting *In re Est. of Scott*, 316 A.2d 883, 886 (Pa. 1974).

Accordingly, arm's-length business dealings do not typically give rise to confidential relationships, *eToll*, 811 A.2d at 22-23, nor do employment agreements. *See Diaz v. Rent-A-Center, Inc.*, No. 03-3763, 2004 WL 241505, 2004 U.S. Dist. LEXIS 2250, at *7-8 (E.D. Pa. Feb. 6, 2004); *see also Enslin v. Coca Cola Co.*, 136 F. Supp. 3d 654, 658 (E.D. Pa. 2015), *aff'd* 739 F. App'x 91 (3d Cir. 2018). In *Enslin*, a service technician sued the Coca-Cola Company,[1] alleging negligence and other causes of action after his confidential information was stolen in a data breach. *Enslin*, 136 F. Supp. 3d at 659-60. Enslin's employment contract required him to give Coca-Cola his social security number, address, credit card numbers, bank account and driver's license information and motor vehicle records. *Enslin*, 136 F. Supp. 3d at 658, 673. Coca-Cola had "represented to [Enslin] that, in exchange for his employment, his [information] would be securely retained." *Id.* at 658.

The court dismissed Enslin's negligence claim because he did not allege facts which could establish a "special relationship" with Coca-Cola that would prevent the economic loss doctrine, which bars certain negligence claims for solely "economic damages unaccompanied by physical injury or property damage," from precluding his claim. *Id.* at 672-73 (quotation omitted).[2] Enslin argued that providing his confidential information as part of his employment contract created a "relationship of special trust."

---

[1] Enslin sued several separate companies affiliated with Coca-Coca. *Enslin*, 136 F. Supp. 3d at 658-59. The Court refers to them collectively as "Coca-Cola."

[2] Pennsylvania law regarding the economic loss doctrine has evolved since *Enslin*. *See Dittman v. UPMC*, 196 A.3d 1036, 1048-56 (Pa. 2018). The doctrine no longer bars negligence claims alleging the breach of duties that "exist[] independently from any contractual obligations between the parties." *Id.* at 528. For this reason, the doctrine does not bar Clemens's negligence claims. *See id.* (recognizing an employer's "common law duty to act with reasonable care in collecting and storing [employees'] personal and financial information on its computer systems").

5

*Id.* at 673.  Treating such a "special relationship" the same as a "confidential" or "fiduciary" one, the court rejected Enslin's argument because his allegations indicated nothing more than "a standard employment contract."  *See id.* at 672-73.  This "arms-length business contract" did not give Coca-Cola "overmastering influence" over Enslin or place him in a position of "weakness or dependence."  *Id.* (quoting *Valley Forge Convention & Visitors Bureau v. Visitor Servs., Inc.*, 28 F. Supp. 2d 947, 952-53 (E.D. Pa. 1998)).[3]

For the same reason, other courts have found no fiduciary duty in situations like Clemens's.  *See Purvis v. Aveanna Healthcare, LLC*, 563 F. Supp. 3d 1360, 1384 (N.D. Ga. 2021) (no fiduciary duty or confidential relationship where employees provided personal information "as a condition of employment" because "the gathering of such information is a common practice for almost any form of employment" and did not independently suggest the employees were "relying upon or trusting their employer in unique and exceptional ways"); *see also In re Waste Mgmt. Data Breach Litig.*, No. 21-6147, 2022 WL 561734, 2022 U.S. Dist. LEXIS 32798, at *15-16 (S.D.N.Y. Feb. 24, 2022) (dismissing a claim for breach of fiduciary duty in a data breach case where the employer "required its employees to share their [personal information]" because New York courts had "consistently found that employers are not fiduciaries for their

---

[3]     While Enslin did not allege his employer "had any fiduciary duty to him," *Enslin*, 136 F. Supp. 3d at 673, the court treated "special" relationships the same as "confidential" or "fiduciary" relationships.  *See id.* at 672-73 (citations and quotations omitted).  Other courts have also referred to these relationships interchangeably.  *See, e.g.*, *Fleming Steel Co. v. Jacobs Eng'g Grp., Inc.*, 373 F. Supp. 3d 567, 602-03 (W.D. Pa. 2019); *eToll*, 811 A.2d at 22-23.

employees" and had not otherwise recognized a fiduciary duty in similar circumstances).[4]

B

Clemens alleges she had a fiduciary relationship with ExecuPharm because she "relied upon compensation" she received from her employment, which was "'at-will,' meaning [her] employment and means of basic financial support could be terminated at any time and for any reason, or for no reason at all." (Am. Compl. ¶ 141(a), (c.)) She also relies on her employer's size, contending ExecuPharm is a "subsidiary and functional service arm of Paraxel," which boasts annual sales of over $2.4 billion and employs over 18,000 people, and that as a result, ExecuPharm did not deal with her on equal terms, "but instead from a position of overmastering dominance," while she dealt with it from a "position of weakness and dependence." (*Id.* ¶ 141(b), (d.)) Due to this alleged imbalance, ExecuPharm "was able to extract . . . significant amounts of [her] highly sensitive personal information as a condition of employment." (*Id.* ¶ 141(e.))

Clemens gave ExecuPharm her personal information and ExecuPharm promised to keep it secure and confidential. (Am. Compl. ¶ 141(i), (h.)) She alleges accordingly that she "had no input whatsoever" in how her information was used, and that "ExecuPharm maintained the unfettered right to use it in any matter it chose without any subsequent authorization or consent" from her. (*Id.* ¶ 141(i.)) She believes this information constituted a substantial portion of her affairs because it concerned her

---

[4] These cases applied Georgia and New York law. Employment relationships do not ordinarily give rise to fiduciary relationships in either state. *See Purvis*, 563 F. Supp. 3d at 1384 (quoting *Atlanta Mkt. Mgmt. Co. v. McLane*, 503 S.E.2d 278, 281-82 (Ga. 1998); *Rather v. CBS Corp.*, 68 A.D.3d 49, 55 (N.Y. App. Div. 2009) (citations omitted); *Barton v. SmartStream Techs.*, No. 16-1718, 2016 WL 2742426, 2016 U.S. Dist. LEXIS 61485, at *19-20 (S.D.N.Y. May 9, 2016 (citations omitted).

identity, financial condition, address, familial relationships and included "substantial information useful to malicious actors' able to misuse it for financial gain." (*Id.* ¶ 141(j).)

These allegations, however, describe a standard employment relationship, not one of "special trust." *See Enslin*, 136 F. Supp. 3d at 672-73. As a condition of employment, Clemens agreed to provide ExecuPharm her confidential personal information, and ExecuPharm promised to keep it safe. While ExecuPharm held power over Clemens as her employer, these allegations "merely describe the typical balance of power in an employer-employee relationship." *Razak v. Uber Techs., Inc.*, No. 16-573, 2016 WL 5874822, 2016 U.S. Dist. LEXIS 139668, at *32 (E.D. Pa. Oct. 7, 2016) (Finding allegations that an employer could restrict an employee's "ability to earn a living" insufficient to give rise to a confidential relationship). Rather than giving ExecuPharm substantial control over her affairs, she provided information that employees typically give their employers. *See, e.g. Ramirez v. Paradies Shops, LLC*, 69 F.4th 1213, 1220 (11th Cir. 2023) ("[e]mployers must obtain sensitive [personal information] about their employees for tax and business purposes"); *Mackey v. Belden, Inc.*, No. 4:21-00149, 2021 WL 3363174, 2021 U.S. Dist. LEXIS 145000, at *34 (E.D. Mo. Aug. 3, 2021) ("It is necessary and reasonable for an employer to obtain and employee's [personal information] in order to provide compensation and benefits"). "There is a crucial distinction between between surrendering control of one's affairs to a fiduciary or confidant or party in a position to exercise undue influence and entering an arm[']s length commercial agreement. *Valley Forge*, 28 F. Supp. 2d at 953.

III

Clemens's failure to allege a confidential relationship dooms her breach of confidence claim as well.

Breach of confidence involves "the unconsented, unprivileged disclosure to a third party of nonpublic information that the defendant has learned within a confidential relationship." *Kamal v. J. Crew Grp., Inc.*, 918 F.3d 102, 114 (3d Cir. 2019) (quoting Alan B. Vickery, Note, *Breach of Confidence: An Emerging Tort*, 82 Colum. L. Rev. 1426, 1455 (1982)); *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 932 (11th Cir. 2020) (*en banc*) (quoting Vickery, *supra*, at 1455) (citing *Kamal*, 918 F.3d at 114); *Vassiliades v. Garfinckle's*, 492 A.2d 580, 591 (D.C. 1985). This tort is "rooted in the concept that the law should recognize some relationships as confidential to encourage uninhibited discussions between the parties involved." *Muransky*, 979 F.3d at 932 (quoting *Young v. U.S. Dep't of Justice*, 882 F.2d 633, 640 (2d Cir. 1989).[5] "Breach of confidence claims traditionally arise in the context of close professional relationships," such as those involving "physicians, therapists, financial institutions, and the like." *Id*.

Pennsylvania state courts have primarily recognized the tort within established confidential relationships. *See, e.g.*, *Haddad v. Gopal*, 787 A.2d 975, 980-81 (Pa. Super. Ct. 2001) (explaining that "in some cases a civil claim for a physician's breach of confidentiality is cognizable" and that "[d]octors have an obligation to their patients to keep communications, diagnosis, and treatment completely confidential") (citing *Moses*

---

[5] Describing breach of confidence as "a relative newcomer to the tort family," the Second Circuit Court of Appeals in *Young* addressed the question of whether New York courts would recognize the tort in the "banker-depositor" context but declined to resolve the issue, leaving its resolution to the state courts. *Young*, 882 F.2d at 640-45.

9

*v. McWilliams*, 549 A.2d 950, 953 (Pa. Super. Ct. 1988) (*en banc*); *see also Alexander v. Knight*, 25 Pa. D. & C.2d 649, 655 (Pa. Ct. Comm. Pl. 1961) (members of the medical profession "stand in a confidential or fiduciary capacity as to their patients"), *aff'd* 177 A.2d 142 (Pa. Super. Ct. 1962). And when referring to this cause of action, Pennsylvania courts do so in narrow terms. *See Grimminger v. Maitra*, 887 A.2d 276, 279 (Pa. Super. Ct. 2005) ("Pennsylvania recognizes a civil cause of action for breach of the physician-patient privilege where confidential disclosures occurred that were unrelated to any judicial proceedings" (quotation omitted)).

Additionally, Pennsylvania recognizes "a cause of action for a breach of a duty of confidentiality to a bank customer." *McGuire v. Shubert*, 722 A.2d 1087, 1090 (Pa. Super. Ct. 1998). The *McGuire* court relied heavily on banks' "implied contractual duty" to keep their customers' information confidential. *Id.* at 1090-92. But generally, the tort "has traditionally been applied to scenarios . . . where confidential medical information is disclosed, and the cause of action is often referred to as breach of physician-patient confidentiality." *List v. Jameson Mem. Hosp.*, 2013 WL 11256398, 2013 Pa. Super. Unpub. LEXIS 571, at *7 & n.2 (Pa. Super. Ct. Aug. 23, 2013) (but acknowledging *Shubert* as the exception).[6] The Pennsylvania Supreme Court has held that breach of confidence is meaningfully distinct from an invasion of privacy claim and is therefore subject to a different limitation period, in part because only breach of

---

[6] *List* was designated as a non-precedential opinion. But "[w]hile the Pennsylvania rules prohibit the Pennsylvania state courts from citing unpublished (or non-precedential) opinions, such prohibition does not apply to federal courts." *Schwartz v. Abex Corp.*, 106 F. Supp. 3d 626, 649 n.63 (E.D. Pa. 2015). The Court therefore relies on it "as persuasive authority regarding the thoughts and opinions of learned Pennsylvania jurists." *Id.*

confidence requires "a breach of a confidential relationship." *Burger v. Blair Med. Assocs.*, 964 A.2d 374, 380 (Pa. 2009).[7]

In her initial complaint, Clemens's breach of confidence claim "focused solely on her relationship to ExecuPharm as its employee" and did not "separately allege a 'confidential relationship.'" *Clemens*, 2023 U.S. Dist. LEXIS 107801, at *15 (quoting *Kamal*, 918 F.3d at 114). The Amended Complaint does not do so either. *See Supra* Part II.

IV

Courts may dismiss claims with prejudice when amendment would be futile. *Kurtz v. Westfield Ins.*, 610 F. Supp. 3d 703, 710 (E.D. Pa. 2022). Amendment is futile when "the complaint, as amended, would fail to state a claim upon which relief would be granted." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). "[A]fter two attempts," Clemens has not plausibly alleged any relationship other than the one employers and employees typically share. *See Kurtz*, 610 F. Supp. 3d at 711. A third attempt would produce the same result. The Court dismisses Counts IV and V with prejudice.

---

[7] The court in *Burger* specifically referred to "a breach of physician-patient confidentiality." *Burger*, 964 A.2d at 378. The Court refers to the tort as breach of confidence consistent with the Third Circuit's opinion in *Kamal*.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*

GERALD J. PAPPERT, J.