## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JENNIFER CLEMENS, individually and on behalf of all others similarly situated,

      Plaintiff,

      v.

EXECUPHARM, INC.,

      Defendant.

Case No. 2:20-cv-03383

## <u>CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE</u>

## <u>CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE</u>

This Settlement Agreement and Release is made as of March 15, 2024, by and between, as hereinafter defined, (a) the Settlement Class Representative,[1] on behalf of herself and the Settlement Class, and (b) Parexel International, LLC (as successor entity to wholly owned entity ExecuPharm, Inc., hereinafter ExecuPharm). This Agreement fully and finally compromises and settles any and all claims that are, were, or could have been asserted against ExecuPharm (including all other Released Parties) in the litigation styled *Clemens v. ExecuPharm, Inc.*, No. 2:20-cv-03383-GJP, pending in the United States District Court for the Eastern District of Pennsylvania, as set forth herein.

## **1.**   **<u>Recitals</u>**

1.1.    On March 13, 2020, ExecuPharm experienced a data security incident that compromised select corporate and personnel information (i.e., the Data Breach).

1.2.    On July 10, 2020, Jennifer Clemens filed a class action complaint against ExecuPharm, Inc. and Parexel International Corporation, in the United States District Court for the Eastern District of Pennsylvania, asserting claims arising out of the Data Breach.

1.3.    On September 4, 2020, ExecuPharm filed a motion to dismiss, which the Court granted in full on February 25, 2021.

1.4.    On March 16, 2021, Jennifer Clemens appealed the Court's order granting ExecuPharm's motion to dismiss.

1.5.    On September 2, 2022, the U.S. Court of Appeals for the Third Circuit reversed and remanded the Court's order granting ExecuPharm's motion to dismiss.

---

[1] All capitalized terms are defined in Section 2 below.

1.6.    On October 14, 2022, ExecuPharm filed a renewed motion to dismiss, which the Court denied in part and granted in part on June 22, 2023, including the dismissal of all claims against Parexel International Corporation (now d/b/a Parexel International (MA) Corporation).

1.7.    On September 6, 2023, Class Counsel filed the Amended Complaint in the Action, which, among other things, asserts claims against ExecuPharm for negligence, breach of implied contract, breach of contract, breach of fiduciary duty, breach of confidence, and declaratory judgment.

1.8.    On October 6, 2023, ExecuPharm filed a partial motion to dismiss, which the Court granted on January 18, 2024, dismissing the claims for breach of confidence and breach of fiduciary duty with prejudice.

1.9.    ExecuPharm denies all material allegations of the Amended Complaint and specifically denies that it failed to properly protect Personal Information, had inadequate data security, or breached any fiduciary duty or implied or express contract.

1.10.    The Parties recognize the expense and length of proceedings necessary to continue litigation of the Action through further motion practice, discovery, trial, and any possible appeals.  The Parties have taken into account the uncertainty and risk of the outcome of further litigation, and the expense, difficulties, and delays inherent in such litigation.  The Parties are also aware of the burdens of proof necessary to establish liability and damages for the claims alleged in the Action and the defenses thereto.  The Parties have determined that the settlement set forth in this Agreement is in their respective best interests and that the Agreement is fair, reasonable, and adequate.  The Parties have

LEGAL02/44123807v11

therefore agreed to settle the claims asserted in the Action pursuant to the terms and provisions of this Agreement, subject to Court approval.

1.11.    It is the intention of the Parties to resolve the disputes and claims which they have between them on the terms set forth below.

NOW, THEREFORE, in consideration of the promises, covenants, and agreements herein described and for other good and valuable consideration acknowledged by each of the Parties to be satisfactory and adequate, and intending to be legally bound, the Parties do hereby mutually agree as follows:

## **2.  Definitions**

As used in all parts of this Agreement, including the recitals above, and the exhibits hereto, the following terms have the meanings specified below:

2.1.    "**Action**" means the action pending in the U.S. District Court for the Eastern District of Pennsylvania captioned *Clemens v. ExecuPharm, Inc.*, No. 2:20-cv-03383-GJP.

2.2.    "**Administration and Notice Costs**" means all reasonable costs and expenses incurred by the Settlement Administrator in carrying out its duties under this Agreement, including all costs and expenses incurred in connection with implementing and executing the Notice Plan.

2.3.    "**Agreement**" or "**Settlement Agreement**" means this Class Action Settlement Agreement and Release and all of its attachments and exhibits, which the Parties understand and agree set forth all material terms and conditions of the Settlement of the Action between them and which is subject to approval by the Court.

2.4.    "**Approved Claims**" means Settlement Claims completed using a Claim Form and submitted by the Claims Deadline found to be valid by and in an amount approved by the Settlement Administrator.

2.5.    "**Attorneys' Fees**" means the attorneys' fees that Class Counsel request the Court to approve for payment by ExecuPharm as compensation for work in prosecuting and settling the Action.  Class Counsel agrees not to seek, and will not accept, more than $675,000.00 in combined Attorneys' Fees and Expenses.

2.6.    "**Amended Complaint**" means the First Amended Class Action Complaint, at Docket Entry Number 49, filed in the Action on September 6, 2023.

2.7.    "**Business Days**" means Monday, Tuesday, Wednesday, Thursday, and Friday, excluding holidays observed by the U.S. federal government.

2.8.    "**Claims Deadline**" means the deadline by which Settlement Class Members must submit any Settlement Claims.  Settlement Claims submitted after the Claims Deadline will not be timely and will not qualify for approval and will be rejected.  The Claims Deadline shall be set by the Court in the Preliminary Approval Order and shall be ninety (90) days after the Notice Date.

2.9.    "**Claim Form**" shall mean the claim form attached as Exhibit B, or a claim form approved by the Court that is substantially similar to Exhibit B.

2.10.    "**Class Counsel**" means Mark S. Goldman of Goldman Scarlato & Penny, P.C., and Norman E. Siegel and J. Austin Moore of Stueve Siegel Hanson LLP.

2.11.    "**Court**" means the United States District Court for the Eastern District of Pennsylvania, where the Action is pending.

2.12.    "**Data Breach**" means the data security incident that ExecuPharm, Inc. experienced on or about March 13, 2020 that compromised select corporate and personnel information and the remedial actions relating thereto, and which is the subject of the Action.

2.13.  "**Defendant**" means ExecuPharm, Inc., a former wholly owned subsidiary of Parexel International (MA) Corporation, which merged into successor Parexel International, LLC, effective January 1, 2023.

2.14.  "**Effective Date**" means the date when all of the conditions set forth in Section 4.1 of this Agreement have occurred; provided, however, that ExecuPharm has not exercised its right of termination under Section 4.2 or Section 4.3 of this Agreement.

2.15.  "**Entity**" means any corporation, partnership, limited liability company, association, trust, or other organization of any type.

2.16.  "**ExecuPharm's Counsel**" means the attorneys for ExecuPharm from the law firm of Alston & Bird LLP.

2.17.  "**ExecuPharm**" refers collectively to ExecuPharm, Inc., a former wholly owned subsidiary of Parexel International (MA) Corporation, which merged into successor Parexel International, LLC effective January 1, 2023, and Parexel International, LLC.

2.18.  "**Expenses**" means the reasonable costs and expenses incurred in litigating the Action that Class Counsel request the Court to approve for payment by ExecuPharm.  Class Counsel agrees not to seek, and will not accept, more than $675,000.00 in combined Attorneys' Fees and Expenses.

2.19.  "**Final Approval**" means entry of a Final Approval Order and Judgment.

2.20.  "**Final Approval Hearing**" means the hearing to be conducted before the Court to determine the fairness, adequacy, and reasonableness of the Agreement pursuant to Federal Rule of Civil Procedure 23 and whether to enter a Final Approval Order and Judgment.  The Final Approval Order and Judgment shall be entered no earlier than

ninety (90) days after the CAFA notices are mailed to ensure compliance with 28 U.S.C. § 1715.

2.21.   "**Final Approval Order and Judgment**" means an order and judgment that the Court enters after the Final Approval Hearing, which shall, among other things, finally approve the Agreement; finally certify the Settlement Class for settlement purposes; dismiss all claims in the Action against Defendant with prejudice; release the Released Parties from the Released Claims as set forth herein; bar and enjoin the Releasing Parties from asserting any of the Released Claims, including during the pendency of any appeal from the Final Approval Order and Judgment; include as an exhibit a list of individuals who timely and validly opted out of the Settlement; and satisfy the settlement-related provisions of Federal Rule of Civil Procedure 23 in all respects.

2.22.   "**Judgment**" means the Final Approval Order and Judgment.

2.23.   "**Long Notice**" means the long form notice attached as Exhibit C or substantially similar to the long form notice attached as Exhibit C.

2.24.   "**Notice Date**" means the date by which notice will be fully commenced, which shall be forty-five (45) days after the Court enters the Preliminary Approval Order.

2.25.   "**Objection Deadline**" means the deadline by which written objections to the Settlement must be filed in the Action's electronic docket or postmarked as set forth in the Preliminary Approval Order.  Such deadline shall be forty (40) days after the Notice Date.

2.26.   "**Opt-Out Deadline**" means the deadline by which written requests for exclusion from the Settlement must be submitted online or postmarked as set forth in the Preliminary Approval Order.  Such deadline shall be forty (40) days after the Notice Date.

LEGAL02/44123807v11

2.27.    "**Parties**" means the Settlement Class Representative, on behalf of herself and the Settlement Class, and ExecuPharm.

2.28.    "**Parties' Counsel**" means Class Counsel and ExecuPharm's Counsel.

2.29.    "**Personal Information**" is intended to be broadly construed and includes any information that could be used to identify, locate, or contact a person (whether on its own or in combination with other information).  The term "Personal Information" also includes, without limitation, Social Security numbers, taxpayer ID/EIN, driver's license numbers, passport numbers, bank account numbers, credit card numbers, national insurance numbers, national ID numbers, IBAN/SWIFT numbers, and beneficiary information, and any and all other personally identifiable information.  For the avoidance of doubt, the term Personal Information includes all information compromised as a result of the Data Breach.

2.30.    "**Preliminary Approval Order**" means the Court's order preliminarily approving the Settlement Agreement materially the same in substance as Exhibit A hereto.

2.31.    "**Released Claims**" means any and all claims (including, without limitation, any and all common law, equitable, and statutory claims arising under the laws of any jurisdiction, including those arising under state and/or federal laws of the United States), defenses, demands, actions, causes of action, rights, offsets, setoffs, suits, remedies, damages, lawsuits, costs, relief for contempt, losses, attorneys' fees, expenses, or liabilities of any kind whatsoever, in law or in equity, for any relief whatsoever, including monetary sanctions or damages for contempt, injunctive or declaratory relief, rescission, general, compensatory, special, liquidated, indirect, incidental, consequential, or punitive damages, as well as any and all claims for treble damages, penalties, interest, attorneys'

7

fees, costs, or expenses, whether known or unknown (including Unknown Claims (defined below)), suspected or unsuspected, existing or potential, contingent or vested, accrued or not accrued, liquidated or unliquidated, matured or unmatured, that in any way concern, arise out of, or relate to the Data Breach or the facts alleged in the Action.

2.32.   "**Released Parties**" means ExecuPharm, Inc., Parexel International, LLC, and Parexel International (MA) Corporation, and each of their current and former parents, subsidiaries, divisions, and affiliated companies, whether indirect or direct, as well as these entities' respective predecessors, successors, assigns, directors, officers, employees, agents, insurers, reinsurers, shareholders, attorneys, advisors, vendors, consultants, representatives, partners, joint venturers, and contractors.

2.33.   "**Releasing Parties**" means the Settlement Class Representative and all Settlement Class Members who do not timely and validly opt out of the Settlement.

2.34.   "**Service Award**" means any payments made, subject to Court approval, to the Settlement Class Representative, which shall be paid by ExecuPharm.

2.35.   "**Settlement**" means the settlement of the Action by and between the Parties, and the terms and conditions thereof as stated in this Agreement.

2.36.   "**Settlement Administrator**" means Simpluris, Inc., or any other notice and settlement administrator with recognized expertise in class action notice and claims generally and data security litigation specifically, selected by ExecuPharm, subject to approval by Plaintiff, and approved by order of the Court.

2.37.   "**Settlement Claim**" means a claim or request for settlement benefits as provided for in this Settlement Agreement.

LEGAL02/44123807v11

2.38.   "**Settlement Class**" means all residents of the United States whose Personal Information was accessed, impacted, compromised, exfiltrated, or stolen as a result of the Data Breach.  Excluded from the Settlement Class are (i) ExecuPharm, and ExecuPharm's board of directors, legal representatives, successors, subsidiaries, and assigns; (ii) any judge, justice, or judicial officer presiding over the Action and the members of their immediate families and judicial staff; and (iii) any individual who timely and validly opts out of the Settlement.

2.39.   "**Settlement Class Member**" means any person within the definition of Settlement Class as defined in Section 2.38.

2.40.   "**Settlement Class Representative**" means Jennifer Clemens.

2.41.   "**Short Notice**" means the short form notice attached as Exhibit D or substantially similar to the short form notice attached as Exhibit D.

2.42.   "**Unknown Claims**" means any and all Released Claims that any Settlement Class Representative or Settlement Class Member does not know or suspect to exist in his or her favor as of the Effective Date and which, if known by him or her, might have affected his or her decision(s) with respect to the Settlement.  With respect to any and all Released Claims, the Parties stipulate and agree that upon the Effective Date, the Settlement Class Representative and Settlement Class Members shall have waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, the District of Columbia, or principle of common law or otherwise, which includes or is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE**

9

**AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Settlement Class Members, including the Settlement Class Representative, may hereafter discover facts in addition to, or different from, those that they now know or believe to be true with respect to the subject matter of the Released Claims, but the Settlement Class Representative expressly shall have, and each other Settlement Class Member shall be deemed to have, and by operation of the Judgment shall have, upon the Effective Date, fully, finally, and forever settled and released any and all of the Released Claims. The Parties acknowledge, and Settlement Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver is a material element of the Settlement Agreement of which this release is a part.

**3.  Presentation of Settlement to the Court**

3.1.    On or before March 15, 2024, the Settlement Class Representative and Class Counsel shall submit this Settlement Agreement to the Court and file a motion for preliminary approval of the Settlement with the Court requesting entry of a Preliminary Approval Order substantially in the form attached hereto as Exhibit A, requesting, among other things:

3.1.1.    Preliminary certification of the Settlement Class for settlement purposes only;

3.1.2.    Preliminary approval of the Settlement Agreement;

3.1.3.    Appointment of Mark S. Goldman of Goldman Scarlato & Penny, P.C., Norman E. Siegel and J. Austin Moore of Stueve Siegel Hanson LLP as Class Counsel;

3.1.4.    Appointment of the Settlement Class Representative as the settlement class representative;

3.1.5.    Approval of the Notice Plan as defined herein;

3.1.6.    Approval of a short form notice substantially similar to the one attached hereto as Exhibit D;

3.1.7.    Approval of a long form notice substantially similar to the one attached hereto as Exhibit C;

3.1.8.    Approval of a claim form substantially similar to the one attached hereto as Exhibit B; and

3.1.9.    Appointment of the Settlement Administrator.

3.2.    The Long Notice, Short Notice, and Claim Form shall be reviewed by the Settlement Administrator and may be revised as agreed by the Parties prior to the submission to the Court for approval.

3.3.    After entry by the Court of a Preliminary Approval Order, and no later than fourteen (14) days before the Final Approval Hearing, Settlement Class Representative shall file a motion seeking final approval of the Settlement and entry of a Final Approval Order and Judgment, including a request that the preliminary certification of the Settlement Class for settlement purposes be made final.

**4.  Effective Date and Termination**

4.1.    The Effective Date of the Settlement shall be the first Business Day after all of the following conditions have occurred:

4.1.1.    The Parties execute this Agreement;

4.1.2.    The Court enters the Preliminary Approval Order;

4.1.3.    Notice is provided to the Settlement Class in accordance with the Preliminary Approval Order and Notice Plan;

4.1.4.    The Court enters the Final Approval Order and Judgment, which consistent with Section 2.21, finally approves the Agreement; finally certifies the Settlement Class for settlement

purposes; dismisses all claims in the Action against Defendant with prejudice; releases the Released Parties from the Released Claims as set forth herein; bars and enjoins the Releasing Parties from asserting any of the Released Claims, including during the pendency of any appeal from the Final Approval Order and Judgment; includes as an exhibit a list of individuals who timely and validly opted out of the Settlement; and satisfies the settlement-related provisions of Federal Rule of Civil Procedure 23 in all respects; and

4.1.5.    The Final Approval Order and Judgment has become final because (i) the time for appeal, petition, rehearing, or other review has expired; or (ii) if any appeal, petition, or request for rehearing or other review has been filed, the Final Approval Order and Judgment is affirmed without material change, or the appeal is dismissed or otherwise disposed of, and no other appeal, petition, rehearing or other review is pending, and the time for further appeals, petitions, and requests for rehearing or other review has expired.

4.2.    ExecuPharm may, in its sole discretion, terminate this Agreement if more than one hundred (100) individuals submit valid and timely requests to exclude themselves from the Settlement.  If ExecuPharm elects to terminate the Settlement pursuant to Section 4.2, it shall provide written notice to Class Counsel no later than fifteen (15) Business Days after the Opt-Out Deadline.

4.3.    This Settlement may be terminated by either Settlement Class Representative or ExecuPharm by serving on counsel for the opposing Party and filing with the Court a written notice of termination within ten (10) Business Days (or such longer time as may be agreed between Class Counsel and ExecuPharm) after any of the following occurrences:

12

4.3.1.    Class Counsel and ExecuPharm mutually agree to termination before the Effective Date;

4.3.2.    The Court rejects, materially modifies, materially amends or changes, or declines to preliminarily or finally approve the Settlement as set forth in this Settlement Agreement;

4.3.3.    An appellate court reverses the Final Approval Order and Judgment, and the Settlement is not reinstated and finally approved without material change by the Court on remand; or;

4.3.4.    The Effective Date does not occur.

4.4.    If this Agreement is terminated under Section 4.2 or 4.3 above, the following shall occur:

4.4.1.    The Parties shall return to the status quo in the Action as if the Parties had not entered into this Agreement;

4.4.2.    Any Court orders approving certification of the Settlement Class and any other orders entered pursuant to this Agreement shall be null and void and vacated, and neither those orders nor any statements made in connection with seeking approval of the Agreement may be used in or cited by any person or Entity in support of claims or defenses or in support or in opposition to a class certification motion in connection with any further proceedings in the Action or in any other action, lawsuit, arbitration, or other proceeding involving any Released Claims; and

4.4.3.    This Agreement shall become null and void, and the fact of this Settlement and that ExecuPharm did not oppose certification of Settlement Class shall not be used or cited by any person or Entity in support of claims or defenses or in support of or in opposition to a class certification motion in connection with any further proceedings in the Action or in any other action, lawsuit, arbitration, or other proceeding involving any Released Claims.

LEGAL02/44123807v11

**5.  Settlement Benefits**

5.1.  All Settlement Class Members who submit an Approved Claim using the Claim Form, which is attached as Exhibit B to this Settlement Agreement, are eligible to claim, as set forth below: (1) Undocumented Lost-Time Reimbursement (see Section 5.1.1); (2) Documented Out-of-Pocket Expense and Document Lost-Time Reimbursement (see Section 5.1.2); and/or (3) Credit Monitoring (see Section 5.1.4).  In lieu of Documented Out-of-Pocket Expense and Lost Time Reimbursement, Settlement Class Members who were California Residents as of March 13, 2020 may elect to claim a California Resident Cash Payment (see Section 5.1.3).

5.1.1.  Undocumented Lost-Time Reimbursement. Settlement Class Members can submit a claim for reimbursement for time spent remedying issues related to the Data Breach for up to seven (7) total hours at a rate of twenty-five United States Dollars ($25) per hour capped at one hundred seventy-five United States Dollars ($175) ("Undocumented Lost-Time Claims").  No documentation need be submitted in connection with Undocumented Lost-Time Claims, but Settlement Class Members must attest that the time claimed was actually spent as a result of the Data Breach.

5.1.2.  Documented Out-of-Pocket Expense and Documented Lost-Time Reimbursement. Settlement Class Members may submit claims for up to ten thousand United States Dollars ($10,000) in compensation by submitting a valid and timely Claim Form with documentation supporting a monetary loss that is fairly traceable to the Data Breach and has not already been reimbursed, including, but not limited to: (i) out-of-pocket costs, expenses, losses, or other charges incurred as a result of identity theft or identity fraud, falsified tax returns, or other possible misuse of a Settlement Class Member's Personal Information; (ii) out-of-pocket costs incurred after the Data Breach was disclosed

14

associated with changing accounts or engaging in other mitigative conduct, such costs may include notary, fax, postage, copying, mileage, and long-distance telephone charges; (iii) out-of-pocket professional fees incurred to address the Data Breach; and (iv) out-of-pocket purchases of credit monitoring or other mitigative services after the Data Breach was disclosed, through the date of the Settlement Class Member's Claim submission. As a component of this documented expenses compensation, Settlement Class Members can also submit a claim for reimbursement for documented time spent remedying issues related to the Data Breach for up to five (5) total hours at a rate of twenty-five United States Dollars ($25) per hour capped at one hundred twenty-five United States Dollars ($125) ("Documented Lost-Time Claims"). Settlement Class Members with Documented Lost-Time Claims must submit documentation and attest that the time claimed was actually spent as a result of the Data Breach. Settlement Class Members may submit claims for Undocumented and Documented Lost-Time Claims, but the time claimed cannot be duplicative between Undocumented and Documented Time. Settlement Class Members with Documented Out-of-Pocket Expense Reimbursement claims must submit documentation supporting that the amount claimed is the result of the Data Breach. This may include receipts or other documentation, not "self-prepared" by the claimant, that documents the costs incurred. "Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but may be considered to add clarity or support to other submitted documentation. There will be no cap on total payments made.

5.1.3.    <u>California Resident Cash Payment</u>. Settlement Class Members who are residents of California may submit claims for a one-time payment of one hundred United States

Dollars ($100) in lieu of Documented Out-of-Pocket Expense Reimbursement and Documented Lost Time Reimbursement. No documentation or attestation is required. The California Resident Cash Payment claim may only be submitted in the alternative to a Documented Out-of-Pocket Expense Reimbursement and Lost-Time claim.

5.1.4. <u>Credit Monitoring</u>. Thirty-six (36) months of 3-bureau credit and identity theft monitoring will be provided for those Settlement Class Members who elect and submit valid claims for such credit and identity theft monitoring. The credit and identity theft monitoring will have the following features: (i) real time monitoring of the credit file at all three major credit bureaus; (ii) identity theft insurance (no deductible) of one million United States dollars ($1,000,000); and (iii) access to fraud resolution agents to help resolve identity thefts.

5.2. Settlement Class Members making claims for any of the relief under Section 5.1 must complete and submit a written Claim Form to the Settlement Administrator, postmarked (or, if submitted electronically in accordance with the requirements for electronic submission of a Claim Form, the date of such submission) on or before the Claims Deadline. The Claim Form must be verified by the Settlement Class Member with a statement that his or her Settlement Claim is true and correct, to the best of his or her knowledge and belief.

5.3. To the extent funds remain due to settlement checks not being cashed by the deadline to do so, the Settlement Administrator will send one reminder notice and/or check reissue giving the Settlement Class Member an additional 90 days to cash the check. After that time, any remaining funds will be provided to Philadelphia Legal Assistance.

## 6. **Duties of Settlement Administrator**

16

6.1.  The Settlement Administrator shall perform the functions specified in this Agreement, any functions specified in the Notice Plan after Court approval, and any other functions approved by the Court.  In addition to other responsibilities that are described elsewhere in this Agreement (and in the Notice Plan, once approved by the Court), the duties of the Settlement Administrator shall include:

6.1.1.  Reviewing, determining the validity of, and processing all claims submitted by Settlement Class Members.  Specifically, the Settlement Administrator, in its sole discretion to be reasonably exercised, will determine whether: (i) the claimant is a Settlement Class Member; (ii) the claimant has provided all information required to complete the Claim Form by the Claims Deadline, including any documentation that may be necessary to reasonably support amounts claimed under Section 5.1; and (iii) the information submitted would lead a reasonable person to conclude, for a Settlement Claim for Documented Out-of-Pocket Expense Reimbursement and Documented Lost-Time submitted under Section 5.1.2, that the alleged expenses/losses resulted from the Data Breach.  The Settlement Administrator may consult with the Parties' Counsel as needed to make individual determinations.

6.1.2.  The Settlement Administrator may at any time (but is not required) request from the claimant (including via email) supplemental claim information as the Settlement Administrator may reasonably require in order to evaluate the Settlement Claim, *e.g.*, documentation requested on the Claim Form and information regarding the claimed losses.  If supplemental claim information is requested, the Settlement Administrator shall give the claimant reasonable time in the Settlement Administrator's discretion but not exceeding twenty-one (21) days to provide the supplemental information before

17

rejecting the claim. Requests for supplemental claim information shall be made as promptly as reasonably possible after the Claims Deadline (or earlier in the discretion of the Settlement Administrator). If the supplemental claim information does not cure a claim defect as reasonably determined by the Settlement Administrator, then the Settlement Claim will be deemed invalid and there shall be no obligation to pay the Settlement Claim. For the avoidance of doubt, the Settlement Administrator is not required to request supplemental claim information, and in reasonably exercising its discretion, may deny a claim without requesting supplemental claim information.

6.1.3.    Establishing and maintaining a post office box for receiving requests for exclusion from the Settlement;

6.1.4.    Establishing and maintaining a Settlement website;

6.1.5.    Responding to Settlement Class Member inquiries via U.S. mail, email, or telephone;

6.1.6.    Establishing a toll-free telephone line for Settlement Class Members to call with Settlement-related inquiries;

6.1.7.    Receiving and processing all written requests for exclusion from the Settlement and providing copies thereof to the Parties' Counsel. If the Settlement Administrator receives any requests for exclusion or other requests after the Opt-Out Deadline, the Settlement Administrator shall promptly provide copies thereof to the Parties' Counsel;

6.1.8.    Within three (3) Business Days after the Opt-Out Deadline, providing a final report to the Parties' Counsel summarizing the number of written requests for exclusion (i.e., requests to opt out), a list of all individuals who have timely and validly excluded themselves from the Settlement in accordance with the requirements of the Settlement, and any other information requested by the Parties' Counsel;

LEGAL02/44123807v11

6.1.9.    After the Effective Date, processing and transmitting any and all distributions to Settlement Class Members;

6.1.10.    Prior to the Final Approval Hearing, preparing and executing an affidavit or declaration to submit to the Court that identifies each Settlement Class Member who timely and validly requested exclusion from the Settlement; and

6.1.11.    Performing any other functions that the Parties jointly agree are necessary to accomplish administration of the Settlement.

6.2.    As specified in Section 2.2, all Administration and Notice Costs incurred by the Settlement Administrator or otherwise in connection with administering the Settlement shall be paid by ExecuPharm.

6.3.    Neither the Parties nor the Parties' Counsel shall have any liability whatsoever with respect to any act or omission of the Settlement Administrator, or any of its designees or agents, in connection with its performance of its duties under this Agreement, or under the Notice Plan once approved by the Court.

6.4.    The Settlement Administrator shall indemnify and hold harmless the Parties and the Parties' Counsel for any liability arising from any act or omission of the Settlement Administrator, or any of its designees or agents, in connection with its performance of its duties under this Agreement, or under the Notice Plan once approved by the Court.

**7.    Notice Plan**

7.1.    The Settlement Administrator shall be responsible for implementing and executing the notice plan ("Notice Plan"), which shall include, among other things, the following:

7.1.1.    Within twenty (20) days after the Court's entry of a Preliminary Approval Order, ExecuPharm shall provide the Settlement Administrator with available contact information for Settlement Class Members, including physical addresses and e-mail

19

addresses where known.  Notice of the Settlement shall be sent via U.S. Mail using the Long Notice and email (if available) using the Short Notice, with an additional reminder (via email if available) to those Settlement Class Members who do not initially submit claims.

7.1.2.  Should the Settlement be terminated for any of the reasons identified in Sections 4.2 or 4.3, the Settlement Administrator shall immediately destroy all contact information received from ExecuPharm for Settlement Class Members.

## 8.  CAFA Notice

8.1.  ExecuPharm will serve or cause to be served the notice required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, not later than ten (10) days after this Agreement is filed with the Court.

## 9.  Covenants Not to Sue

9.1.  The Settlement Class Representative covenants and agrees: (i) not to file, commence, prosecute, intervene in, or participate in (as class members or otherwise) any action in any jurisdiction based on or relating to any Released Claim, or the facts and circumstances relating thereto, against any of the Released Parties; (ii) not to organize or solicit the participation of Settlement Class Members, or persons who would otherwise fall within the definition of Settlement Class Member but who requested to be excluded from the Settlement, in a separate class for purposes of pursuing any action based on or relating to any Released Claim or the facts and circumstances relating thereto, against any of the Released Parties; and (iii) that the foregoing covenants and this Agreement shall be a complete defense to any Released Claim against any of the Released Parties.

## 10. Representations and Warranties

20

10.1.　Each Party represents that:

(i)　such Party has the full legal right, power, and authority to enter into and perform this Agreement, subject to Court approval;

(ii)　such Party is voluntarily entering into the Agreement as a result of arm's-length negotiations conducted by its counsel;

(iii)　such Party is relying solely upon its own judgment, belief, and knowledge, and the advice and recommendations of its own independently selected counsel, concerning the nature, extent, and duration of their rights and claims hereunder and regarding all matters which relate in any way to the subject matter hereof;

(iv)　such Party has been represented by, and has consulted with, the counsel of its choice regarding the provisions, obligations, rights, risks, and legal effects of this Agreement and has been given the opportunity to review independently this Agreement with such legal counsel and agree to the particular language of the provisions herein;

(v)　the execution and delivery of this Agreement by such Party and the consummation by such Party of the transactions contemplated by this Agreement have been duly authorized by such Party;

(vi)　except as provided herein, such Party has not been influenced to any extent whatsoever in executing the Agreement by representations, statements, or omissions pertaining to any of the foregoing matters by any Party or by any person representing any Party to the Agreement;

(vii)　each of the Parties assumes the risk of mistake as to facts or law; and

(viii)　this Agreement constitutes a valid, binding, and enforceable agreement.

10.2.　The Settlement Class Representative represents and warrants that she has not assigned or otherwise transferred any interest in any of the Released Claims against any of the Released Parties, and further covenants that she will not assign or otherwise transfer any interest in any of the Released Claims against any of the Released Parties.

10.3.　The Settlement Class Representative represents and warrants that she has no surviving claim or cause of action against any of the Released Parties with respect to any of the Released Claims.

## 11. Releases

11.1.    As of the Effective Date, all Releasing Parties, on behalf of themselves, their heirs, assigns, beneficiaries, executors, administrators, predecessors, and successors, and any other person purporting to claim on their behalf, hereby expressly, generally, absolutely, unconditionally, and forever release and discharge any and all Released Claims against the Released Parties, except for claims relating to the enforcement of the Settlement or this Agreement.

11.2.    As of the Effective Date, the Released Parties hereby expressly, generally, absolutely, unconditionally, and forever release and discharge the Settlement Class Members and Class Counsel from all past, present, and future claims and causes of action of every nature and description (including Unknown Claims), whether arising under federal, state, statutory, regulatory, common, foreign, or other law that arise in any way from or relate to the prosecution of the Action, the Settlement Agreement, or the Settlement claims process, except for claims relating to the enforcement of the Settlement or this Agreement or claims for breach of this Agreement.

11.3.    The Parties understand that if the facts upon which this Agreement is based are found hereafter to be different from the facts now believed to be true, each Party expressly assumes the risk of such possible difference in facts, and agrees that this Agreement, including the releases contained herein, shall remain effective notwithstanding such difference in facts. The Parties agree that in entering this Agreement, it is understood and agreed that each Party relies wholly upon its own judgment, belief, and knowledge and that each Party does not rely on inducements, promises, or representations made by anyone other than those embodied herein. Notwithstanding any other provision of this Agreement (including, without limitation, this Section), nothing in this Agreement shall

be deemed to in any way impair, limit, or preclude the Parties' rights to enforce any provision of this Agreement, or any court order implementing this Agreement, in a manner consistent with the terms of this Agreement.

## 12. No Admission of Wrongdoing

12.1.   This Agreement compromises claims which are contested in good faith, and it shall not be deemed an admission by any of the Parties as to the merits of any claim or defense. This Agreement shall not be offered or received against ExecuPharm as evidence of or construed as or deemed to be evidence of any presumption, concession, or admission by ExecuPharm respect to the truth of any fact alleged by the Settlement Class Representative or any Settlement Class Member or the validity of any claim that has been or could have been asserted in the Action or in any litigation, or the deficiency of any defense that has been or could have been asserted in the Action or in any litigation, or of any liability, negligence, fault, breach of duty, or wrongdoing of ExecuPharm.

12.2.   This Agreement shall not be construed as or received in evidence as an admission, concession, or presumption against the Settlement Class Representative or any Settlement Class Member that any of their claims are without merit, or that any defense asserted by ExecuPharm has any merit.

12.3.   The negotiation of the Parties leading to this Agreement shall remain subject to the provisions of Federal Rule of Evidence 408, all similar state statutes, rules of evidence, and arbitral rules, and the mediation privilege.

12.4.   Notwithstanding the foregoing provisions of Section 12 or any other terms in this Settlement, ExecuPharm may use, offer, admit, or refer to this Agreement and to the Settlement, if approved, where it deems necessary to defend itself in any other action, or in any judicial, administrative, regulatory, arbitrative, or other proceeding, as it deems

LEGAL02/44123807v11

necessary to comply with or address regulatory and/or disclosure obligations, to pursue insurance and/or other indemnification, and to enforce this Agreement and the Settlement, including the releases and covenants contained therein.

## 13. Opt-Outs

13.1.    Any individual who wishes to exclude themselves from the Settlement must submit a written request for exclusion to the Settlement Administrator, which shall be submitted via regular mail or overnight mail, postmarked no later than the Opt-Out Deadline, and verified no later than the Opt-Out Deadline.

13.2.    The written request for exclusion must:

     (i)    Identify the case name of the Action;

     (ii)    Identify the name and address of the individual seeking exclusion from the Settlement;

     (iii)    Be personally signed by the individual seeking exclusion;

     (iv)    Include a statement clearly indicating the individual's intent to be excluded from the Settlement; and

     (v)    Request exclusion only for that one individual whose personal signature appears on the request.

13.3.    Opt-out requests seeking exclusion on behalf of more than one individual shall be deemed invalid by the Settlement Administrator.

13.4.    Any individual who submits a valid and timely request for exclusion in the manner described herein shall not: (i) be bound by any orders or judgments entered in connection with the Settlement; (ii) be entitled to any relief under, or be affected by, the Agreement; (iii) gain any rights by virtue of the Agreement; or (iv) be entitled to object to any aspect of the Settlement.

13.5.    Any individual who does not submit a valid and timely request for exclusion in the manner described herein shall be deemed to be a Settlement Class Member upon expiration of the Opt-Out Deadline, and shall be bound by all subsequent proceedings, orders, and judgments applicable to the Settlement Class.

13.6.    Class Counsel agree that this Settlement Agreement is fair, reasonable, and in the best interests of the Settlement Class Members.

## 14. **Objections**

14.1.    Any Settlement Class Member who wishes to object to the Settlement must submit a written objection to the Court on or before the Objection Deadline, as specified in the Preliminary Approval Order.

14.2.    The written objection must include:

(i)     The case name and number of the Action;

(ii)    The name, address, and telephone number of the objecting Settlement Class Member and, if represented by counsel, of his/her counsel;

(iii)   A statement of whether the objection applies only to the objector, to a specific subset of the class, or to the entire class;

(iv)    Information identifying the objector as a Settlement Class Member, including proof that the objector is a member of the Settlement Class (e.g., copy of the objector's settlement notice, copy of original notice of the Data Breach, or a statement explaining why the objector believes he or she is a Settlement Class Member);

(v)     A statement of the specific grounds for the objection; and

(vi)    A statement of whether the objecting Settlement Class Member intends to appear at the Final Approval Hearing, and if so, whether personally or through counsel.

14.3.    Any Settlement Class Member who fails to object to the Settlement in the manner described in this Agreement, the Preliminary Approval Order, and in the notice provided pursuant to the Notice Plan shall be deemed to have waived any such objection, shall not

be permitted to object to any terms or approval of the Settlement at the Final Approval

Hearing, and shall be precluded from seeking any review of the Settlement or the terms

of this Agreement by appeal or any other means.

## 15. Service Awards

15.1.    The Settlement Class Representative and Class Counsel shall submit a request to the

Court for payment of a Service Award, not to exceed five thousand United States Dollars

($5,000), to the Settlement Class Representative.  Any request for a Service Award must

be filed with the Court at least twenty-one (21) days before the Objection Deadline.

15.2.    For the avoidance of doubt, Class Counsel agrees not to seek and will not accept a

Service Award of more than five thousand United States Dollars ($5,000). The Parties

agree that the effectiveness of this Agreement is not contingent upon the Court's

approval of the payment of a Service Award.  If the Court declines to approve, in whole

or in part, a request for a Service Award, all remaining provisions in this Agreement

shall remain in full force and effect.  No decision by the Court, or modification or reversal

or appeal of any decision by the Court, concerning the payment of a Service Award, or

the amount thereof, shall be grounds for cancellation or termination of this Agreement.

## 16. Attorneys' Fees and Expenses

16.1.    Class Counsel shall submit a request to the Court for payment of Attorneys' Fees, and

for reimbursement of Expenses incurred in prosecuting and settling the Action.  Class

Counsel agrees not to seek or accept Attorneys' Fees and Expenses totaling more than

$675,000.  Any request for Attorneys' Fees and Expenses must be filed with the Court

at least twenty-one (21) days before the Objection Deadline.

16.2.    For the avoidance of doubt, Class Counsel agrees not to seek or accept Attorneys' Fees

and Expenses that, when combined, total more than $675,000. ExecuPharm agrees to

26

separately pay the Attorneys' Fees and Expenses no later than fifteen (15) business days after the Effective Date. The Parties agree that the effectiveness of this Agreement is not contingent upon the Court's approval of the payment of any Attorneys' Fees or Expenses.  If the Court declines to approve, in whole or in part, a request for Attorneys' Fees or Expenses, all remaining provisions in this Agreement shall remain in full force and effect.  No decision by the Court, or modification or reversal or appeal of any decision by the Court, concerning the payment of Attorneys' Fees or Expenses, or the amount thereof, shall be grounds for cancellation or termination of this Agreement.

**17.** **Confidentiality**

17.1.    The Parties and the Parties' Counsel agree that the terms of this Settlement shall remain confidential and shall not be disclosed until the Agreement is publicly filed in connection with the Settlement Class Representative's motion seeking a Preliminary Approval Order.  Notwithstanding the foregoing, ExecuPharm may disclose this Agreement for legal, compliance, and regulatory-related purposes.

**18.** **Notices**

18.1.    All notices to Class Counsel provided for in this Agreement shall be sent by email and First Class mail to the following:

Mark S. Goldman
GOLDMAN SCARLATO & PENNY, P.C.
161 Washington Street, Suite 1025
Conshohocken, Pennsylvania 19428
goldman@lawgsp.com

Norman E. Siegel
J. Austin Moore
STUEVE SIEGEL HANSON LLP
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
siegel@stuevesiegel.com
moore@stuevesiegel.com

18.2.    All notices to ExecuPharm or ExecuPharm's Counsel provided for in this Agreement shall be sent by email and First Class mail to the following:

> Donald M. Houser
> ALSTON & BIRD LLP
> 1201 West Peachtree Street NW
> Atlanta, GA  30309
> donald.houser@alston.com

18.3.    All notices to the Settlement Administrator provided for in this Agreement shall be sent by either email or First Class mail using the contract information provided by the Settlement Administrator.

18.4.    The notice recipients and addresses designated in this Section may be changed by written notice posted to the Settlement website.

## 19. Miscellaneous Provisions

19.1.    Within 15 business days after the Effective Date, ExecuPharm shall cause to be paid the court approved Attorneys' Fees, Expenses, and Service Award, as set forth above in Sections 15 and 16, to an account established by Class Counsel.  Class Counsel shall thereafter distribute the award of Attorneys' Fees and Expenses among Class Counsel and any Service Award to the Settlement Class Representative.

19.2.    Payment of Approved Claims shall be made by check or other electronic means approved by the Parties and shall be mailed and postmarked within sixty (60) days after the Effective Date, or within thirty (30) days after the date that the Settlement Claim is approved, whichever is latest.  After the Effective Date but with sufficient time for Approved Claims to be paid as provided for by this Paragraph, ExecuPharm shall cause to be disbursed to an account as directed by the Settlement Administrator funds sufficient for the Settlement Administrator to pay the Approved Claims.  Activation codes for

28

Credit Monitoring Services to Settlement Class Members who submit Approved Claims for this benefit will be sent within thirty (30) days after the Effective Date.

19.3.    <u>Further Steps</u>. The Parties agree that they each shall undertake any further required steps to effectuate the purposes and intent of this Agreement.

19.4.    <u>Cooperation</u>. The Parties: (i) acknowledge that it is their intent to consummate this Settlement Agreement and (ii) agree to cooperate to the extent reasonably necessary to effect and implement all terms and conditions of the Settlement Agreement and to exercise their best efforts to accomplish the foregoing terms and conditions of the Settlement Agreement.

19.5.    <u>Contractual Agreement</u>. The Parties understand and agree that all terms of this Agreement, including the exhibits hereto, are contractual and are not a mere recital, and each signatory warrants that he or she is competent and possesses the full and complete authority to execute and covenant to this Agreement on behalf of the Party that he or she represents.

19.6.    <u>Headings</u>.  Any headings contained herein are for informational purposes only and do not constitute a substantive part of this Agreement.  In the event of a dispute concerning the terms and conditions of this Agreement, the headings shall be disregarded.

19.7.    <u>Integration</u>. This Agreement constitutes the entire agreement among the Parties and no representations, warranties, or inducements have been made to any Party concerning this Agreement other than the representations, warranties, and covenants expressly contained and memorialized herein.

19.8.    <u>Exhibits</u>. The exhibits to this Agreement are expressly incorporated by reference and made part of the terms and conditions set forth herein.

19.9.    <u>Drafting</u>. The language of all parts of this Agreement shall in all cases be construed as a whole, according to their fair meaning, and not strictly for or against any Party.  No Party shall be deemed the drafter of this Agreement.  The Parties acknowledge that the terms of the Agreement are contractual and are the product of negotiations between the Parties and their counsel.  Each Party and their counsel cooperated in the drafting and preparation of the Agreement.  In any construction to be made of the Agreement, the Agreement shall not be construed against any Party and any canon of contract interpretation to the contrary shall not be applied.

19.10.    <u>Modification or Amendment</u>. This Agreement may not be modified or amended, nor may any of its provisions be waived, except by an express writing signed by the Parties who executed this Agreement, or their successors.

19.11.    <u>Waiver</u>. The failure of a Party to insist upon strict performance of any provision of this Agreement shall not be deemed a waiver of such Party's rights or remedies or a waiver by such Party of any default by another Party in the performance or compliance of any of the terms of this Agreement.  In addition, the waiver by one Party of any breach of this Agreement by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Agreement.

19.12.    <u>Severability</u>. Should any part, term, or provision of this Agreement be declared or determined by any court or tribunal to be illegal or invalid, the Parties agree that the Court may modify such provision to the extent necessary to make it valid, legal, and enforceable.  In any event, such provision shall be separable and shall not limit or affect the validity, legality, or enforceability of any other provision hereunder.

19.13.    <u>Counterparts</u>. The Settlement Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument.  A complete set of executed counterparts shall be filed with the Court.  This Agreement may be executed using electronic signature technology (e.g., via DocuSign, Adobe Sign, or other electronic signature technology), and such signed electronic record shall be valid and as effective to bind the party so signing as a paper copy bearing such party's handwritten signature.

19.14.    <u>Electronic Mail</u>. Transmission of a signed Agreement by electronic mail shall constitute receipt of an original signed Agreement by mail.

19.15.    <u>Successors and Assigns</u>. The Agreement shall be binding upon, and inures to the benefit of, the heirs, executors, successors, and assigns of the Parties hereto.

19.16.    <u>Governing Law</u>. All terms and conditions of this Agreement shall be governed by and interpreted according to the laws of Pennsylvania, without reference to its conflict of law provisions, except to the extent the federal law of the United States requires that federal law governs.

19.17.    <u>Interpretation</u>. The following rules of interpretation shall apply to this Agreement:

(i)      Definitions apply to the singular and plural forms of each term defined.

(ii)     Definitions apply to the masculine, feminine, and neuter genders of each term defined.

(iii)    Whenever the words "include," "includes" or "including" are used in this Agreement, they shall not be limiting but rather shall be deemed to be followed by the words "without limitation."

19.18.    <u>Fair and Reasonable</u>. The Parties and the Parties' Counsel believe this Agreement is a fair and reasonable compromise of the disputed claims and in the best interest of the

Parties.  The Parties have arrived at this Agreement as a result of extensive arms-length negotiations.

19.19.  <u>Retention of Jurisdiction</u>. The administration and consummation of the Settlement as embodied in this Agreement shall be under the authority of the Court, and the Court shall retain jurisdiction over the Settlement and the Parties for the purpose of enforcing the terms of this Agreement.  The Court also shall retain exclusive jurisdiction over any determination of whether any subsequent suit is released by the Settlement Agreement.

19.20.  <u>No Government Third-Party Rights or Beneficiaries</u>. No government agency or official can claim any rights under this Agreement or Settlement.

19.21.  <u>No Collateral Attack</u>. The Settlement Agreement shall not be subject to collateral attack, including by any Settlement Class Member or any recipient of notices of the Settlement after the Judgment is entered.

19.22.  <u>Public Statements</u>. The Parties agree not to make disparaging statements to the press regarding the Settlement or any Party.  The Parties may publicly discuss the Settlement, the terms of the Settlement, any matter addressed in plaintiffs' motion for Preliminary Approval Order, or any other matter as required by law or regulation.

LEGAL02/44123807v11

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed by themselves or by their duly authorized counsel:

**Class Counsel on behalf of the Settlement Class Representative (who has specifically assented to the terms of this Settlement Agreement) and the Settlement Class:
']**

Name: J. Austin Moore
Date:

**Parexel International, LLC, as successor to Defendant ExecuPharm, Inc.**

Name: Martin F. Mahoney II
Title: Chief Compliance Officer & Deputy General Counsel
Date: March 15, 2024

33

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

JENNIFER CLEMENS, individually and on
behalf of all others similarly situated,

          Plaintiff,

v.

EXECUPHARM, INC.,

          Defendant.

Case No. 2:20-cv-03383-GJP

## [PROPOSED] PRELIMINARY APPROVAL ORDER

This matter is before the Court for consideration of whether the proposed Settlement reached by the parties should be preliminarily approved, the proposed Settlement Class preliminarily certified, and the proposed plan for notifying the proposed Settlement Class approved. Having reviewed the proposed Settlement, together with its exhibits, and based upon the relevant papers and all prior proceedings in this matter, the Court has determined the proposed Settlement satisfies the criteria for preliminary approval, the proposed Settlement Class should be preliminarily certified, and the proposed notice plan approved.[1] Accordingly, good cause appearing in the record, **IT IS HEREBY ORDERED THAT**:

### Provisional Certification of The Settlement Class

(1)      The Court provisionally certifies the following Settlement Class:

All residents of the United States whose Personal Information was accessed, impacted, compromised, exfiltrated, or stolen as a result of the Data Breach. Excluded from the Settlement Class are (i) ExecuPharm, and ExecuPharm's board of directors, legal representatives, successors, subsidiaries, and assigns; (ii) any judge, justice, or judicial officer presiding over the Action and the members of their

---

[1] Unless otherwise indicated, capitalized terms used herein have the same meaning as in the Settlement.

immediate families and judicial staff; and (iii) any individual who timely and validly opts out of the Settlement.

This Settlement Class is provisionally certified for purposes of settlement only.

(2)  The Court determines that for settlement purposes only the proposed Settlement Class meets all the requirements of Federal Rule of Civil Procedure 23(a) and (b)(3), namely that the class is so numerous that joinder of all members is impractical; that there are common issues of law and fact; that the claims of the proposed Settlement Class Representative are typical of absent class members; that the proposed Settlement Class Representative will fairly and adequately protect the interests of the class as she has no interests antagonistic to or in conflict with the class and has retained experienced and competent counsel to prosecute this matter; that common issues predominate over any individual issues; and that a class action is the superior means of adjudicating the controversy.

(3)    Jennifer Clemens is designated and appointed as the Settlement Class Representative.

(4)    The following lawyers are designated as Interim Class Counsel pursuant to Fed. R. Civ. P. 23(g)(3):  Mark S. Goldman of Goldman Scarlato & Penny, P.C., and Norman E. Siegel and J. Austin Moore of Stueve Siegel Hanson LLP.  The Court finds that these lawyers are experienced and will adequately protect the interests of the Settlement Class.

**<u>Preliminary Approval of the Proposed Settlement</u>**

(5)    On March 15, 2024, Plaintiff filed an Unopposed Motion for an Order Preliminarily Approving the Class Action Settlement in accordance with Rule 23(e) of the Federal Rules of Civil Procedure.

(6). Plaintiff summarizes the relevant terms of the proposed Settlement (which are set forth in full and in greater detail in the Settlement) as follows:

a.    Reimbursement for Lost Time. Settlement Class Members who lost time as a result of the Data Breach can submit a claim for up to 7 hours of undocumented time at $25 per hour (maximum of $175).

b.    Reimbursement for Documented Out-of-Pocket Expenses and Lost Time. Settlement Class Members who have documentation showing that they spent money, incurred losses, or lost time as a result of the Data Breach can submit a claim for reimbursement up to $10,000, including up to 5 hours of documented time at $25 per hour (maximum of $125).

c.    Alternative Cash Payment for California Class Members. Settlement Class Members who reside in the state of California as of March 13, 2020, can submit a claim for a one-time payment of $100 in lieu of a claim for reimbursement for Documented Out-of-Pocket Expenses and Lost Time.

d.    Free 3-Bureau Credit Monitoring Services: Settlement Class Members are eligible to enroll in three years of free 3-bureau credit monitoring with Identity Defense Total 3-Bureau.

(7)    There are no aggregate caps on the amount of money available to pay the relief described above. The Settlement provides a straight-forward method for Settlement Class Members to claim benefits and sets forth a process for notifying the Settlement Class, obtaining final approval of the Settlement, and administering the Settlement.

**Directive to Issue Notice to Settlement Class**

(8)    Pursuant to Federal Rule of Civil Procedure 23(e)(1)(A), the Court finds that it has sufficient information to enable it to determine whether to direct notice of the proposed Settlement to the Settlement Class. The Court thus first considers the fairness, reasonableness, and adequacy

of the Settlement under Rule 23(e)(1)(B)(i) and (e)(2).

(9)     First, the Court finds that the Class Representative and Class Counsel have adequately represented the Settlement Class. Class Counsel are highly experienced in complex class actions and data breach litigation, and the Class Representative's interests align with those of the Settlement Class Members, as they all suffered the same injury: the alleged theft of their personal information in the Data Breach.

(10)     Next, the Court finds that the Settlement is the result of adversarial, arm's-length, informed, and non-collusive negotiations between the Parties. The Parties pursued adversarial litigation for several years prior to reaching the Settlement, and the involvement of a mediator overseeing the Parties' negotiations further supports the finding that the Settlement was negotiated at arms-length.

(11)     Further, the relief provided to the Settlement Class Members under the Settlement is adequate, taking into account the substantial risks of continued litigation, especially in data breach cases such as this one. The Settlement offers Settlement Class Members benefits including reimbursement for Out-of-Pocket Losses and Lost Time spent addressing the Data Breach. In addition, the Settlement offers protection against prospective harm from the Data Breach by providing three years of free 3-Bureau Credit Monitoring Services.

(12)     In addition, the proposed method for distributing relief to the Settlement Class Members is adequate and effective. The Settlement Class will be notified of the Settlement directly via U.S. Mail and e-mail (where available), and Settlement Class Members may submit claims either via a Settlement website or by mail.

(13)     The Settlement's provisions for awards of attorneys' fees and expenses and service payments to the Class Representative, to be paid by ExecuPharm, are reasonable, subject to the

Court's review of a timely filed fee application. The Settlement provides that Class Counsel will seek attorneys' fees and expenses in an amount not to exceed $675,000.00, and that ExecuPharm shall pay any award of attorneys' fees and expenses (not to exceed a total of $675,000.00) in addition to any benefits provided to Settlement Class Members. The Settlement also provides that Class Counsel will seek a service award for the Class Representative in the amount of $5,000.00, to be paid separately by ExecuPharm. As these awards do not diminish the recovery available to the Settlement Class Members, the Settlement's provision for these awards supports a finding that the Court will likely be able to approve the Settlement. Further, the proposed Settlement treats all Settlement Class Members equitably relative to each other.

(14)    Next, the Court determines that it will likely be able to certify the proposed class for purposes of judgment on the proposed Settlement under Rule 23(e)(1)(B)(ii), as:

(a) the Settlement Class contains thousands of individuals and joinder of all such persons would be impracticable, and the Settlement Class therefore is sufficiently numerous;

(b) there are questions of law and fact that are common to the Settlement Class and those common questions of law and fact predominate over any questions affecting any individual in the Settlement Class;

(c) the claims of the Class Representative are typical of the claims of the Settlement Class they seek to represent for purposes of the Settlement, as they suffered and seek to remedy the same injury;

(d) a class action is superior to other available means of adjudicating the dispute, as it is the most efficient and effective means of resolving the claims of the geographically dispersed Settlement Class Members; and

(e) The Class Representative and Class Counsel are adequate representatives of the

Settlement Class, as Class Counsel are experienced and qualified, and the Class Representative has no conflicts of interest with the Settlement Class.

(15)    Because the Court finds it will likely be able to approve the proposed Settlement and to certify the Settlement Class for purposes of judgment on the proposal, the Court finds that Notice should issue to the Settlement Class.

### **Final Approval Hearing**

(16)    A Final Approval Hearing shall take place before the Court on _____, 2024, at \_\_\_ a.m./p.m. in Room 1050, 11614 U.S. Courthouse, 601 Market Street, Philadelphia, PA 19106, to determine, among other things, whether: (a) the proposed Settlement Class should be finally certified for settlement purposes pursuant to Federal Rule of Civil Procedure 23; (b) the Settlement should be finally approved as fair, reasonable and adequate and, in accordance with the Settlement's terms, all claims in the Amended Complaint and Action should be dismissed with prejudice; (c) Settlement Class Members should be bound by the releases set forth in the Settlement; (d) the proposed Final Approval Order and Judgment should be entered; (e) the application of Class Counsel for an award of attorneys' fees, costs, and expenses should be approved; and (f) the application for a Service Award should be approved.  Any other matters the Court deems necessary and appropriate will also be addressed at the hearing.

(17)    Class Counsel shall submit their application for fees, costs, and expenses and the application for a Service Award at least 21 days before the Objection Deadline.

(18)    Any Settlement Class Member that has not timely and properly excluded itself from the Settlement in the manner described below, may appear at the Final Approval Hearing in person or by counsel and be heard, to the extent allowed by the Court, regarding the proposed Settlement; provided, however, that no Settlement Class Member that has elected to exclude itself from the

Settlement shall be entitled to object or otherwise appear, and, further provided, that no Settlement Class Member shall be heard in opposition to the Settlement unless the Settlement Class Member complies with the requirements of this Order pertaining to objections, which are described below.

### Administration

(19)    Simpluris, Inc. is appointed as the Settlement Administrator, with responsibility for reviewing, determining the validity of, and processing all claims submitted by Settlement Class Member, and all other obligations of the Settlement Administrator as set forth in the Settlement.

### Notice to the Class

(20)    The Notice Plan, along with the Short Notice, Long Notice, and Claim Form attached to the Settlement as Exhibit A (Claim Form), Exhibit B (Long Notice), and Exhibit D (Short Notice), satisfy the requirements of Federal Rule of Civil Procedure 23 and due process and thus are approved.  Non-material modifications to these exhibits may be made without further order of the Court.  The Settlement Administrator is directed to carry out the Notice Plan and to perform all other tasks that the Settlement requires.

(21)    The Court finds that the form, content, and method of giving notice to the Settlement Class as described in the Notice Plan, Short Notice, Long Notice, and Claim Form: (a) constitute the best practicable notice to the Settlement Class; (b) are reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the action, the terms of the proposed Settlement, and their rights under the proposed Settlement; (c) are reasonable and constitute due, adequate, and sufficient notice to those persons entitled to receive notice; and (d) satisfy the requirements of Federal Rule of Civil Procedure 23, the constitutional requirement of due process, and any other legal requirements.  The Court further finds that the

notice is written in plain language, uses simple terminology, and is designed to be readily understandable by Settlement Class Members.

## Exclusions from the Class

(22)    Any individual that wishes to be excluded from the Settlement must mail a written notification of such intent via United States mail to the designated address established by the Settlement Administrator, postmarked no later than 40 days after the Notice Date (the "Opt-Out Deadline").    The written notification must include the name of this Action (*Clemens v. ExecuPharm, Inc.*, Case No. 2:20-cv-03383-GJP (E.D. Pa.)), the full name and address of the individual seeking exclusion from the Settlement; be personally signed by the individual seeking exclusion; include a statement in the body of the document clearly indicating the individual's intent to be excluded from the Settlement; and request exclusion only for that one individual whose personal signature appears on the request.  Any individual who does not submit a valid and timely request for exclusion in the manner described herein shall be deemed to be a Settlement Class Member upon expiration of the Opt-Out Deadline, and shall be bound by the Settlement, including all releases and covenants therein, as well as all subsequent proceedings, orders, and judgments applicable to the Settlement Class.

(23)    All individuals who submit a valid and timely request for exclusion from the Settlement shall not: (i) be bound by any orders or judgments entered in connection with the Settlement; (ii) be entitled to any relief under, or be affected by, the Agreement; (iii) gain any rights by virtue of the Agreement; or (iv) be entitled to object to any aspect of the Settlement..

(24)    The Settlement Administrator shall provide the parties with copies of all requests for exclusion promptly upon receipt, and, within three (3) Business Days after the Opt-Out Deadline, a final report summarizing the number of written requests for exclusion (i.e., requests to

opt out), a final list of all that have timely and validly excluded themselves from the Settlement Class in accordance with the terms of the Settlement and herein, and any other information requested by the Parties' Counsel.  Prior to the Final Approval Hearing, the Settlement Administrator shall also prepare and execute a declaration identifying each individual who timely and validly requested exclusion from the Settlement.

### Objections to the Settlement

(25)    A Settlement Class Member that complies with the requirements of this Order may object to the Settlement.

(26)    No Settlement Class Member shall be heard, and no papers, briefs, pleadings, or other documents submitted by any Settlement Class Member shall be received and considered by the Court, unless a written objection is submitted to the Court on or before the Objection Deadline, which shall be 40 days after the Notice Date.  For the objection to be considered by the Court, the written objection must include:

1. The case name and number of the Action;

2. The name, address, and telephone number of the objecting Settlement Class Member and, if represented by counsel, of his/her counsel;

3. A statement of whether the objection applies only to the objector, to a specific subset of the class, or to the entire class;

4. Information identifying the objector as a Settlement Class Member, including proof that the objector is a member of the Settlement Class (e.g., copy of the objector's settlement notice, copy of original notice of the Data Breach, or a statement explaining why the objector believes he or she is a Settlement Class Member);

5. A statement of the specific grounds for the objection; and

6. A statement of whether the objecting Settlement Class Member intends to appear at the Final Approval Hearing, and if so, whether personally or through counsel.

(28)    A written notice of objection may either be electronically filed in the Action's electronic docket on or before the Objection Deadline; or sent via first class, postage-prepaid

United States Mail, postmarked no later than the Objection Deadline to the Settlement Administrator at the address provided in the Notice and on the Settlement website.

(29)    Any Settlement Class Member who fails to object to the Settlement in the manner described herein shall be deemed to have waived any such objection, shall not be permitted to object to any terms or approval of the Settlement at the Final Approval Hearing, and shall be precluded from seeking any review of the Settlement or the terms of this Agreement by appeal, collateral attack, or any other means.

## Claims Process and Distribution Plan

(30)    The Settlement establishes a process for assessing and determining the validity and value of claims and a methodology for paying Settlement Class Members that submit a timely, valid Claim Form.  The Court preliminarily approves this process.

(31)    Settlement Class Members that qualify for and wish to submit a Claim Form shall do so in accordance with the requirements and procedures specified in the Settlement, including the Claim Form.  If the Settlement is finally approved, all Settlement Class Members that qualify for any benefit under the Settlement but fail to submit a claim in accordance with the requirements and procedures specified in the Settlement, including Claim Form, shall be forever barred from receiving any such benefit, but will in all other respects be subject to and bound by the provisions of the Settlement, including the releases included in the Settlement, and the Final Approval Order and Judgment.

## Termination of the Settlement and Use of this Order

(32)    This Order shall become null and void and shall be without prejudice to the rights of the Parties, all of which shall be restored to their respective positions existing immediately before this Court entered this Order, if the Settlement is not finally approved by the Court or is

terminated in accordance with the terms of the Settlement. In such event, the Settlement shall become null and void and be of no further force and effect, and neither the Settlement (including any Settlement-related filings) nor the Court's orders, including this Order, relating to the Settlement shall be used or referred to for any purpose whatsoever.

(33)    If the Settlement is not finally approved or there is no Effective Date under the terms of the Settlement, then this Order shall be of no force or effect; shall not be construed or used as an admission, concession, or declaration by or against ExecuPharm, Parexel International (MA) Corporation, or Parexel International, LLC of any fault, wrongdoing, breach, or liability; shall not be construed or used as an admission, concession, or declaration by or against the Settlement Class Representative or any other Settlement Class Member that his or her claims lack merit or that the relief requested is inappropriate, improper, unavailable; and shall not constitute a waiver by any party of any defense (including without limitation any defense to class certification) or claims he or she may have in this Action or in any other lawsuit.

**Stay of Proceedings**

(34)    Except as necessary to effectuate this Order, this matter and any deadlines set by the Court in this matter are stayed and suspended pending the Final Approval Hearing and issuance of the Final Approval Order and Judgment, or until further order of this Court.

**Continuance of Final Approval Hearing**

(35)    The Court reserves the right to adjourn or continue the Final Approval Hearing and related deadlines without further written notice to the Settlement Class. If the Court alters any of those dates or times, the revised dates and times shall be posted on the website maintained by the Settlement Administrator.

**Actions By Settlement Class Members**

(36)    The Court stays and enjoins, pending Final Approval of the Settlement, any actions, lawsuits, or other proceedings brought by Settlement Class Members against ExecuPharm, Parexel International (MA) Corporation, and Parexel International, LLC related to the Data Breach.

### Summary of Deadlines

(37)    The Settlement, as preliminarily approved in this Order, shall be administered according to its terms pending the Final Approval Hearing.  Deadlines arising under the Settlement and this Order include but are not limited to the following:

| ACTION | DEADLINE |
| --- | --- |
| ExecuPharm provides CAFA notice required by 28 U.S.C. § 1715(b) | Within 10 days after the filing of Plaintiff's Motion for Preliminary Approval |
| Notice Date | 45 days after entry of this Preliminary Approval Order |
| Motion for Attorneys' Fees and Expenses and Service Awards | 21 days prior to Objection Deadline |
| Opt-Out/ Exclusion Deadline | 40 days after Notice Date (i.e., 85 days after entry of this Preliminary Approval Order) |
| Objection Deadline | 40 days after Notice Date (i.e., 85 days after entry of this Preliminary Approval Order) |
| Claims Deadline | 90 days after Notice Date (i.e., 135 days after entry of this Preliminary Approval Order) |
| Final Approval Brief and Response to Objections Due | At least 14 days prior to Final Approval Hearing |

| Final Approval Hearing | No earlier than 90 days after Notice Date (i.e., 135 days after entry of this Preliminary Approval Order) |
|---|---|

**ENTERED:**

DATED: _____, 2024        By:    _____

HONORABLE GERALD J. PAPPERT

# EXHIBIT B

**Must be postmarked
or submitted online
NO LATER THAN
Month Day, 2024**

EXECUPHARM SETTLEMENT
PO BOX 5290

## ExecuPharm Settlement Claim Form

### SETTLEMENT BENEFITS – WHAT YOU MAY GET

You may submit a claim form to recover benefits from a class action settlement against ExecuPharm, Inc. arising out of a March 2020 data breach. **The easiest way to submit a claim is online at www.EPSettlement.com**, or you can complete and mail this Claim Form to the mailing address above.  To receive any of the below benefits, you must submit the Claim Form below by mail or file a claim online by Month Day, 2024.

<u>**You may submit a claim for one or more of these benefits**</u>:

1. **Reimbursement for Lost Time**. If you lost time as a result of the ExecuPharm data breach, you can submit a claim for up to 7 hours of undocumented time at $25 per hour (maximum of $175).

2. **Reimbursement for Documented Out-of-Pocket Expenses and Lost Time**. If you have documentation showing that you spent money, incurred losses, or lost time as a result of the ExecuPharm data breach, you can submit a claim for reimbursement up to $10,000, including up to 5 hours of documented time at $25 per hour (maximum of $125).

3. **Alternative Cash Payment for California Class Members**: If you were a resident of the state of California as of March 13, 2020, you can submit a claim for a one-time payment of $100 in lieu of a claim for reimbursement for Documented Out-of-Pocket Expenses and Lost Time.

4. **Free 3-Bureau Credit Monitoring Services**: You can submit a claim to enroll in three years of free 3-bureau credit monitoring with Identity Defense Total 3-Bureau.

*        *        *

**Claims must be submitted online or mailed by Month Day, 2024.  Use the address at the top of this form for mailed claims.**

*Please note: The Settlement Administrator will determine your eligibility for reimbursement for Documented Out-of-Pocket Expenses and Lost Time and may contact you to request additional documents to process your claim.*

For more information and complete instructions visit
**www.EPSettlement.com**

**Settlement benefits will be distributed only after the Settlement is approved by the Court.**

## Your Information
*We will use this information to contact you and process your claim.  It will not be used for any other purpose.  If any of the following information changes, you must promptly notify us by emailing xx@EPSettlement.com.*

| | | | |
|---|---|---|---|
| **1. NAME:** | First | Middle Initial | Last |
| **2. MAILING ADDRESS:** | Street Address | | |
| | Apt. No. | | |
| | City | | |
| | State | | |
| | Zip | | |
| **3. PHONE NUMBER:** | | | |
| **4. EMAIL ADDRESS:** | | | |
| **5. UNIQUE ID provided on notice):** | | | |

## Cash Payment: Money You Lost or Spent

If you lost or spent money trying to prevent or recover from fraud or identity theft caused by the Data Breach for which you made reasonable efforts to avoid or to seek reimbursement and have not been reimbursed for that money, you can receive reimbursement for up to $10,000.  These are referred to as Documented Losses.

It is important for you to send documents that show what happened and how much you lost or spent, so that you can be repaid. The documents must show that your claimed losses are a result of the Data Breach. Please note that claimed losses incurred *before* the Data Breach (i.e., before March 13, 2020) could not have been incurred as a result of the Data Breach and therefore are not recoverable.

| Loss Type and Examples of Documents | Approximate Amount of Expense and Date | Description of Loss or Money Spent and Supporting Documents (Identify what you are attaching, and why it's related to the ExecuPharm Data Breach) |
|---|---|---|

| ☐ Costs or expenses incurred in connection with taking measures to mitigate identity theft or fraud as a result of the Data Breach.<br><br>*Examples: Receipts for costs incurred associated with changing accounts or passports* | $<br><br><br>Date: | _____<br>_____<br>_____<br>_____<br>_____<br>_____ |
| ☐ Credit monitoring and identity theft protection purchased on or after 3/13/2020 as a result of the Data Breach, through the date of your Claim submission.<br><br>*Examples: Receipts or statements for credit monitoring or other mitigative services* | $<br><br><br>Date: | _____<br>_____<br>_____<br>_____ |
| ☐ Costs, expenses, and losses due to identity theft, fraud, or misuse of your personal information on or after 3/13/2020 as a result of the Data Breach.<br><br>*Examples: Account statement with unauthorized charges highlighted; police reports; IRS documents; FTC Identity Theft Reports; letters refusing to refund fraudulent charges* | $<br><br><br>Date: | _____<br>_____<br>_____<br>_____<br>_____ |
| ☐ Professional fees paid to address identity theft on or after 3/13/2020 as a result of the Data Breach.<br><br>*Examples: Receipts, bills, and invoices from accountants, lawyers, or others* | $<br><br><br>Date: | _____<br>_____<br>_____<br>_____ |
| ☐ Other expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges as a result of the Data Breach<br><br>*Examples: Phone bills, receipts, detailed list of places you traveled (i.e. police station, IRS office), reason why you traveled there (i.e. police report or letter from IRS re:* | $<br><br><br>Date: | _____<br>_____<br>_____<br>_____<br>_____<br>_____ |

| | | |
|---|---|---|
| *falsified tax return) and number of miles you traveled* | | |
| ☐ If you submitted documents in connection with a claim for out-of-pocket losses above, and you have documents showing the time you spent in connection with those out-of-pocket losses, you can recover up to 5 hours of that time.<br><br>Number of Hours Spent<br>_____<br><br>(max = 5 hours at $25 per hour)<br><br>*Examples: Documents and email exchanges showing that you spent time changing bank accounts as result of the Data Breach or phone bills reflecting time spent with the call(s) identified, along with written explanation as to how the calls were in response to the Data Breach.* | | _____<br>_____<br>_____<br>_____<br>_____ |

## California Resident Cash Payment

***California Residents Only***.  If you were a resident of the state of California as of March 13, 2020, do you wish to claim a one-time payment of $100 instead of a Documented Losses?  No documentation or attestation is required.

Yes ☐    No or Not Applicable ☐ (skip to Question No. 3)

## Cash Payment: Lost Time

Did you spend time or additional time other than what is documented above addressing issues related to the Data Breach?  You may make a claim for up to 7 hours of undocumented time at $25 per hour (maximum of $175).

Yes ☐ (Please sign attestation below)   No ☐ (skip to Question No. 4)

I spent (up to seven) _____ hours dealing with the repercussions of the Data Breach to be reimbursed at a rate of $25 per hour.

## Free Credit Monitoring

Would you like to claim three years of free 3-bureau credit monitoring from Identity Defense Total 3-Bureau?

Yes ☐    No ☐

Please provide the email address where you would like to receive the activation code (if different from above) _____

## How You Would Like to Receive Your Cash Payment

If you made a claim for a cash payment on this Claim Form, you can elect to receive your payment either by check or by electronic payment (e.g. PayPal or similar service). If you choose an electronic payment, instructions for receiving your cash payment will be sent to the email address you provided on this Claim Form. Checks must be cashed within __**__ days.

Which do you prefer?

☐ Electronic payment
☐ Check

z

## Signature

I affirm under the laws of the United States that the information supplied in this Claim Form is true and correct to the best of my knowledge and that any documents that I have submitted in support of my claim are true and correct copies of original documentation.

I understand that I may be asked to provide more information by the Settlement Administrator before my claim is complete.

| Signature: | Date: |
|---|---|
| | |

**Print Name:**

REMINDER: You can submit your claim online at www.EPSettlement.com. If you choose to submit your claim by mail, this form must be completed, signed, and sent to the Settlement Administrator, postmarked no later than **Month Day, 2024**, and addressed to: [ADDRESS]

# EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

# You may be entitled to benefits from a class action settlement, including cash reimbursement and free credit monitoring.

*A federal court has authorized this Notice. This is <u>not</u> a solicitation from a lawyer.*

- A class action settlement has been reached in a lawsuit against ExecuPharm, Inc., arising out of a March 2020 data breach that may have resulted in the exposure of your personal information. The easiest way to submit a claim is at www.EPSettlement.com.

- Under the terms of the settlement, you can recover the following benefits:

  o **Reimbursement for Undocumented Lost Time**. If you lost time as a result of the ExecuPharm data breach, you can submit a claim for up to 7 hours of undocumented time at $25 per hour (maximum of $175).

  o **Reimbursement for Documented Out-of-Pocket Expenses and Lost Time**. If you have documentation showing that you spent money, incurred losses, or lost time as a result of the ExecuPharm data breach, you can submit a claim for reimbursement up to $10,000, including up to 5 hours of documented time at $25 per hour (maximum of $125).

  o **Alternative Cash Payment for California Class Members**: If you were a resident of the state of California as of March 13, 2020, you can submit a claim for a one-time payment of $100 in lieu of a claim for reimbursement for Documented Out-of-Pocket Expenses and Lost Time.

  o **Free 3-Bureau Credit Monitoring Services**: You can submit a claim to enroll in three years of free 3-bureau credit monitoring with Identity Defense Total 3-Bureau.

**Your legal rights are affected whether or not you act. Please read this Notice carefully.**

| YOUR LEGAL RIGHTS AND OPTIONS | | DEADLINE |
|---|---|---|
| **SUBMIT A CLAIM FORM TO OBTAIN CASH BENEFITS** | • You must submit a claim form by mail or online in order to receive reimbursement for Out-of-Pocket Expenses and/or Lost Time. | **MONTH DD, 2024** |
| **OBTAIN CREDIT MONITORING** | • You must submit a claim form by mail or online to enroll in three years of free 3-bureau credit monitoring with Identity Defense Total 3-Bureau. | **MONTH DD, 2024** |
| **EXCLUDE YOURSELF** | • Get no Settlement benefits.<br>• Keep your right to sue or continue to sue ExecuPharm for the claims released by the Settlement.<br>• You cannot request to exclude yourself and still object. | **MONTH DD, 2024** |
| **OBJECT** | • Tell the Court why you do not like the Settlement.<br>• You will still be bound by the Settlement if the Court approves it. | **MONTH DD, 2024** |

| | | |
|---|---|---|
| | • You may still file a Claim Form for benefits under the Settlement. | |
| **Do Nothing** | • Get no Settlement benefits. Be bound by the Settlement. | |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

- The Court in charge of this case must still decide whether to approve the Settlement and the requested attorneys' fees and expenses. No Settlement benefits or payments will be provided unless the Court approves the Settlement and it becomes final.

**BASIC INFORMATION**................................................................................**PAGE X**
    1. Why is this Notice being provided?
    2. What is this lawsuit about?
    3. Why is the lawsuit a class action?
    4. Why is there a Settlement?

**WHO IS INCLUDED IN THE SETTLEMENT** ....................................................**PAGE X**
    5. How do I know if I am part of the Settlement?
    6. Are there exceptions to being included in the Settlement?
    7. What if I am still not sure whether I am part of the Settlement?

**THE SETTLEMENT BENEFITS—WHAT YOU GET IF YOU QUALIFY**..................**PAGE X**
    8. What does the Settlement provide?
    9. Is there additional information available regarding the reimbursement of out-of-pocket expenses and compensation for time spent dealing with the data breach?
    10. What am I giving up to receive Settlement benefits or stay in the Settlement Class?

**HOW TO GET BENEFITS FROM THE SETTLEMENT**.......................................**PAGE X**
    11. How do I make a claim for Settlement benefits?
    12. What happens if my contact information changes after I submit a claim?
    13. When will I receive my Settlement benefits?

**THE LAWYERS REPRESENTING YOU** ...........................................................**PAGE X**
    14. Do I have lawyers in this case?
    15. How will Class Counsel be paid?

**EXCLUDING YOURSELF FROM THE SETTLEMENT**.........................................**PAGE X**
    16. How do I exclude myself from the Settlement?
    17. If I exclude myself, can I get anything from this Settlement?
    18. If I do not exclude myself, can I sue ExecuPharm for the same thing later?

**OBJECTING TO THE SETTLEMENT**...............................................................**PAGE X**
    19. How do I tell the Court that I do not like the Settlement?
    20. What is the difference between objecting and asking to be excluded?

**THE FINAL APPROVAL HEARING** .................................................................**PAGE X**
    21. When and where will the Court decide whether to approve the Settlement?
    22. Do I have to attend the Final Approval Hearing?
    23. May I speak at the Final Approval Hearing?

**IF YOU DO NOTHING** .................................................................................**PAGE X**

24. What happens if I do nothing at all?

GETTING MORE INFORMATION..................................................................................PAGE X

25. How do I get more information?

# BASIC INFORMATION

| 1.   Why is this Notice being provided? |
| --- |

A Federal Court authorized this Notice because you have the right to know about the proposed Settlement of this class action lawsuit that may affect your rights. This notice explains the nature of the lawsuit, the general terms of the proposed settlement and what it may mean to you. This notice also explains the ways you may participate in, or exclude yourself from, the Settlement.

The Honorable Gerald J. Pappert of the United States District Court for the Eastern District of Pennsylvania is the judge overseeing this class action. The case is known as *Clemens v. ExecuPharm, Inc.*, Case No. 2:20-cv-03383-GJP (the "Lawsuit"). The individual who filed this lawsuit is called the "Plaintiff" or "Class Representative" and the settling company she sued, ExecuPharm, Inc., is called "ExecuPharm" or the "Defendant."

| 2.   What is this lawsuit about? |
| --- |

Plaintiff alleges that on or around March 13, 2020, cybercriminals obtained unauthorized access to ExecuPharm's servers and exfiltrated the personal information of certain current and former employees of ExecuPharm and Parexel (the "Data Breach"). The exfiltrated information may have included Social Security numbers, taxpayer ID/EIN, driver's license numbers, passport numbers, bank account numbers, credit card numbers, national insurance numbers, national ID numbers, IBAN/SWIFT numbers, and beneficiary information.

ExecuPharm denies that it did anything wrong, and no court or other entity has made any judgment or other determination of any wrongdoing. Instead, Plaintiff and ExecuPharm have agreed to a settlement to avoid the risk, cost, and time of further litigation.

| 3.   Why is the lawsuit a class action? |
| --- |

In a class action, one or more people called class representatives sue on behalf of all people who have similar claims. Together all these people are called a "Settlement Class" or "Settlement Class Members." One court resolves the issues for all Settlement Class Members, except for those Settlement Class Members who timely exclude themselves from the Settlement Class. Here, the Settlement Class Representative sued on behalf of a class of all individuals whose information may have been impacted as a result of the Data Breach.

| 4.   Why is there a Settlement? |
| --- |

The Court has not decided in favor of Plaintiff or ExecuPharm. Instead, both sides agreed to a settlement. The Settlement is not an admission that ExecuPharm did something wrong, but rather is a compromise to end the lawsuit. Settlements avoid the costs and uncertainty of a trial and related appeals, while more quickly providing benefits to members of the Settlement Class. The Settlement Class Representative and her attorneys believe the Settlement is fair, reasonable, and adequate and, thus, best for the Settlement Class.

# WHO IS INCLUDED IN THE SETTLEMENT?

### 5.  How do I know if I am part of the Settlement?

You are a Settlement Class Member if you received this notice or you were one of the approximately 3,728 individuals who were mailed or e-mailed a notification that your personal information may have been impacted in the Data Breach occurring in or around March 2020.

### 6.  Are there exceptions to being included in the Settlement?

Yes. Excluded from the Settlement Class are: (1) all Settlement Class Members who timely and validly request exclusion ("opt-out") from the Settlement Class; (2) ExecuPharm, and ExecuPharm's board of directors, legal representatives, successors, subsidiaries, and assigns; and (3) any judge, justice, or judicial officer presiding over the Action and the members of their immediate families and judicial staff.

### 7.  What if I am still not sure whether I am part of the Settlement?

If you are still not sure whether you are a Settlement Class Member, you may go to the Settlement Website at www.EPSettlement.com or call the Settlement Administrator's toll-free number at 1-XXX-XXX-XXX.

# THE SETTLEMENT BENEFITS—WHAT YOU GET IF YOU QUALIFY

### 8.  What does the Settlement provide?

**Reimbursement for Undocumented Lost Time**. If you lost time as a result of the Data Breach, you can submit a claim for up to 7 hours of undocumented time at $25 per hour (maximum of $175). Settlement Class Members must attest that the time claimed was actually spent as a result of the Data Breach.

**Reimbursement for Documented Out-of-Pocket Expenses and Lost Time**. If you are a Settlement Class Member and you file a valid and timely Claim Form, you may be eligible for reimbursement of documented out-of-pocket expenses, not to exceed $10,000 per Settlement Class Member, that were incurred as a result of the Data Breach. This may include, but is not limited to:

- Out-of-pocket costs, expenses, losses, or other charges incurred as a result of identity theft or identity fraud, falsified tax returns, or other possible misuse of a Settlement Class Member's Personal Information;

- Out-of-pocket costs incurred after the Data Breach was disclosed associated with changing accounts or engaging in other mitigative conduct, such costs may include notary, fax, postage, copying, mileage, and long-distance telephone charges;

- Out-of-pocket professional fees incurred to address the Data Breach; and

- Out-of-pocket purchases of credit monitoring or other mitigative services after the Data Breach was disclosed, through the date of the Settlement Class Member's Claim submission.

As a component of this documented expenses compensation, Settlement Class Members can also submit a claim for reimbursement for documented time spent remedying issues related to the Data Breach for up to five (5) total hours at a rate of twenty-five United States Dollars ($25) per hour capped at one hundred twenty-five United States Dollars ($125) ("Documented Lost-Time Claims"). Settlement Class Members with Documented Lost-Time claims must submit documentation and attest that the time claimed was actually spent as a result of the Data Breach. Settlement Class Members may submit claims for Undocumented and Documented Lost-Time Claims, but the time claimed

cannot be duplicative between Undocumented and Documented Time. Settlement Class Members with Documented Out-of-Pocket Expense Reimbursement claims must submit documentation supporting that the amount claimed is the result of the Data Breach.

**Alternative Cash Payment for California Class Members**: If you were a resident of the state of California as of March 13, 2020, you can submit a claim for a one-time payment of $100 in lieu of a claim for reimbursement for Documented Out-of-Pocket Expenses and Lost Time.

**Free 3-Bureau Credit Monitoring Services**: You can submit a claim to enroll in three years of free 3-bureau credit monitoring with Identity Defense Total 3-Bureau. The credit and identity theft monitoring will have the following features: (1) real time monitoring of the credit file at all three major credit bureaus; (2) identity theft insurance (no deductible) of one million United States dollars ($1,000,000); and (3) access to fraud resolution agents to help resolve identity thefts.

| **9.  Is there additional information available regarding the reimbursement of out-of-pocket expenses and compensation for time spent dealing with the Data Breach?** |
|---|

Yes. Settlement Class Members seeking reimbursement must complete and submit a Claim Form to the Settlement Administrator by **Month Day, 2024**. Claim Forms can be submitted online at www.EPSettlement.com or by mail.  If by mail, the Claim Form must be postmarked by **Month Day, 2024**.

| **10.  What am I giving up to receive Settlement benefits or stay in the Settlement Class?** |
|---|

Unless you exclude yourself, you are choosing to remain in the Settlement Class. If the Settlement is approved and becomes final, all of the Court's orders will apply to you and legally bind you. You will not be able to sue, continue to sue, or be part of any other lawsuit against ExecuPharm and the Released Parties for the Released Claims.

Section 2.31 of the Settlement Agreement defines the claims that will be released by Settlement Class Members who do not exclude themselves from the Settlement. More information regarding the Released Parties and the Released Claims can be found in the Settlement Agreement available at www.EPSettlement.com.

# HOW TO GET BENEFITS FROM THE SETTLEMENT

| **11.  How do I make a claim for Settlement benefits?** |
|---|

To submit a claim for Reimbursement for Undocumented Lost Time, Documented Out-of-Pocket Expenses and Lost Time, and/or Free 3-Bureau Credit Monitoring Services, you will need to submit a claim form. There are two options for submitting claims:

(1)  <u>File Online</u>: You may fill out and submit the claim form online at www.EPSettlement.com. This is the easiest way to file a claim.

(2)  <u>File by Mail</u>: You can download a copy of the claim form at LINK and mail it to the address below. Alternatively, you can ask the Settlement Administrator to mail a claim form to you by calling 1-XXX-XXX-XXX. Fill out your claim form, and mail it (including postage) to:

ExecuPharm Settlement Administrator
PO Box XXXX

Claims Forms must be submitted online or postmarked by **[DATE]**; otherwise you will not be entitled to any of the Settlement benefits, but you will be bound by the Settlement and the Court's judgment.

## 12.  What happens if my contact information changes after I submit a claim?

If you change your mailing address or email address after you submit a Claim Form, it is your responsibility to inform the Settlement Administrator of your updated information. You may notify the Settlement Administrator of any changes by calling 1-XXX-XXX-XXX or by writing to:

ExecuPharm Settlement Administrator
PO Box xxxx
[CITY/ STATE/ ZIP]

## 13.  When will I receive my Settlement benefits?

If you make a valid claim, payment will be provided by the Settlement Administrator after the Settlement is approved by the Court and becomes final.

It may take time for the Settlement to be approved and become final.  It also takes time for all the Claim Forms to be processed. Please be patient and check www.EPSettlement.com for updates.

# THE LAWYERS REPRESENTING YOU

## 14.  Do I have a lawyer in this case?

Yes, the Court has appointed Norman E. Siegel and J. Austin Moore of Stueve Siegel Hanson LLP and Mark S. Goldman of Goldman Scarlato & Penny, P.C. to represent you and the Settlement Class for the purposes of this Settlement. You may hire your own lawyer at your own cost and expense if you want someone other than Class Counsel to represent you in this Lawsuit.

## 15.  How will Class Counsel be paid?

Class Counsel will file a motion asking the Court to award them attorneys' fees and litigation expenses not to exceed $675,000 to be paid by ExecuPharm. They will also ask the Court to approve a $5,000 service award to Plaintiff for initiating in this lawsuit and her efforts in achieving the Settlement. If awarded by the Court, Defendant will pay fees, costs, expenses, and service awards directly. The Court may award less than these amounts.

Class Counsel's application for attorneys' fees, expenses, and service awards will be made available on the Settlement Website at www.EPSettlement.com before the deadline for you to comment on or object to the Settlement.

# EXCLUDING YOURSELF FROM THE SETTLEMENT

If you are a Settlement Class Member and want to keep any right you may have to sue or continue to sue ExecuPharm or the Released Parties on your own based on the claims raised in this Lawsuit or released by the Released Claims, then you must take steps to get out of the Settlement. This is called excluding yourself from – or "opting out" of – the Settlement.

## 16.  How do I exclude myself from the Settlement?

To exclude yourself from the Settlement, you must mail the Settlement Administrator written notice of a request for exclusion, which includes:

(1) The case name (*Clemens v. ExecuPharm, Inc.*, Case No. 2:20-cv-03383-GJP) (E.D. Pa.);

(2) Your name, address, and telephone number;

(3) A clear statement you want to be excluded from the Settlement Class, such as "I hereby request to be excluded from the proposed Settlement Class in *Clemens v. ExecuPharm, Inc.*, Case No. 2:20-cv-03383-GJP) in the United States District Court for the Eastern District of Pennsylvania"; and

(4) Your signature.

Requests for exclusion must seek exclusion only for the single individual whose personal signature appears on the request. A request that seeks exclusion on behalf of more than one individual shall be deemed invalid by the Settlement Administrator.

The exclusion request must be **postmarked** and sent to the Settlement Administrator at the following address by **Month Day, 2024**:

ExecuPharm Settlement Administrator
PO Box **xxxx**
[CITY/ STATE/ ZIP]

You cannot exclude yourself by telephone or by email.

> **17.  If I exclude myself, can I still get anything from the Settlement?**

No. If you exclude yourself, you are telling the Court you do not want to be part of the Settlement. You can only get Settlement benefits if you stay in the Settlement and submit a valid Claim Form that is approved by the Settlement Administrator.

> **18.  If I do not exclude myself, can I sue the Defendant for the same thing later?**

No. Unless you exclude yourself, you give up any right to sue ExecuPharm and the Released Parties for the Released Claims in this Settlement. You must exclude yourself from this Lawsuit to start or continue with your own lawsuit or be part of any other lawsuit against the Defendant or any of the Released Parties. If you have a pending lawsuit, speak to your lawyer in that case immediately.

## OBJECT TO THE SETTLEMENT

> **19.  How do I tell the Court that I do not like the Settlement?**

If you are a Settlement Class Member, you can tell the Court that you do not agree with all or any part of the Settlement or requested attorneys' fees and expenses. You can also give reasons why you think the Court should not approve the Settlement or attorneys' fees and expenses. To object, you must file your written objection electronically in the Court's docket *OR* mail your written objection to the Settlement Administrator, as provided below, no later than **Month Day, 2024**, stating you object to the Settlement in *Clemens v. ExecuPharm, Inc.*, Case No. 2:20-cv-03383-GJP) (E.D. Pa.). The objection must also include the following additional information:

(1)    The case name and number of the Action;

(2)    The name, address, and telephone number of the objecting Settlement Class Member and, if represented by counsel, of his/her counsel;

(3)    A statement of whether the objection applies only to the objector, to a specific subset of the class, or to the entire class;

(4)     Information identifying the objector as a Settlement Class Member, including proof that the objector is a member of the Settlement Class (e.g., copy of the objector's settlement notice, copy of original notice of the Data Breach, or a statement explaining why the objector believes he or she is a Settlement Class Member);

(5)     A statement of the specific grounds for the objection; and

(6)     A statement of whether the objecting Settlement Class Member intends to appear at the Final Approval Hearing, and if so, whether personally or through counsel.

To be timely, written notice of an objection in the appropriate form must be electronically filed in the Action's electronic docket on or before the MONTH DD, 2024; or sent via first class, postage-prepaid United States Mail to the Settlement Administrator no later than XXXX at the following address:

ExecuPharm Settlement Administrator
PO Box xxxx
[CITY/ STATE/ ZIP]

Any Settlement Class member who fails to comply with the requirements for objecting in Section 14 of the Settlement Agreement shall waive and forfeit any and all rights he or she may have to appear separately and/or to object to the Settlement Agreement and shall be bound by all the terms of the Settlement Agreement and by all proceedings, orders and judgments in the Lawsuit.

**20.  What is the difference between objecting and asking to be excluded?**

Objecting is simply telling the Court you do not like something about the Settlement or the requested attorneys' fees, expenses, and/or service award. You can object only if you stay in the Settlement Class (that is, do not exclude yourself). You will still be bound by the Settlement if you object. Requesting exclusion is telling the Court you do not want to be part of the Settlement Class or the Settlement. If you exclude yourself, you cannot object to the Settlement, and you will not be bound by the Settlement and will not receive any Settlement benefits.

## THE FINAL APPROVAL HEARING

**21.  When and where will the Court decide whether to approve the Settlement?**

The Court will hold a Final Approval Hearing on **Month Day, 2024, at X:XX a.m.** before the Honorable Gerald J. Pappert, U.S. District Court for the Eastern District of Pennsylvania, 11614 U.S. Courthouse, 601 Market Street, Philadelphia, PA 19106.

At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate and decide whether to approve: the Settlement, Class Counsel's application for attorneys' fees, costs and expenses, and the service award to Plaintiff. If there are objections, the Court will consider them. The Court will also listen to people who have asked to speak at the hearing.

<u>Note</u>: The date and time of the Final Approval Hearing are subject to change. The Court may also decide to hold the hearing via videoconference or by phone. Any change will be posted at **www.EPSettlement.com**.

**22.  Do I have to attend to the Final Approval Hearing?**

No. Class Counsel will answer any questions the Court may have. However, you are welcome to attend at your own expense. If you send an objection, you do not have to come to Court to talk about it. As long as you file or mail your written objection on time the Court will consider it.

| 23. May I speak at the Final Approval Hearing? |
| --- |

Yes, as long as you do not exclude yourself, you can (but do not have to) participate and speak for yourself at the Final Approval Hearing. This is called making an appearance. You also can have your own lawyer speak for you. If you choose to make an appearance, you must follow all of the procedures for objecting to the Settlement listed in Section 19 above and specifically include a statement whether you and your counsel will appear at the Final Approval Hearing.

## IF YOU DO NOTHING

| 24. What happens if I do nothing at all? |
| --- |

If you are a Settlement Class Member and you do nothing, you will not receive any Settlement benefits. You will give up the rights explained in the "Excluding Yourself from the Settlement" section of this Notice, including your right to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Defendant or any of the Released Parties about the legal issues in this lawsuit that are released by the Settlement Agreement relating to the Data Breach.

## GETTING MORE INFORMATION

| 25. How do I get more information? |
| --- |

This Notice summarizes the proposed Settlement. Complete details are provided in the Settlement Agreement. The Settlement Agreement and other related documents are available at www.EPSettlement.com, by calling 1-XXX-XXX-XXXX or by writing to:

ExecuPharm Settlement Administrator
PO Box xxxx

**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT'S CLERK OFFICE REGARDING THIS NOTICE.**

# EXHIBIT D

# You may be entitled to benefits from a class action settlement, including cash reimbursement and free credit monitoring.

*A federal court has authorized this Notice. This is <u>not</u> a solicitation from a lawyer.*

- A class action settlement has been reached in a lawsuit against ExecuPharm, Inc., arising out of a March 2020 data breach that may have resulted in the exposure of your personal information. The easiest way to submit a claim is at <u>www.EPSettlement.com</u>.

- Under the terms of the settlement, you can recover the following benefits:

  o **Reimbursement for Undocumented Lost Time**. If you lost time as a result of the ExecuPharm data breach, you can submit a claim for up to 7 hours of undocumented time at $25 per hour (maximum of $175).

  o **Reimbursement for Documented Out-of-Pocket Expenses and Lost Time**. If you have documentation showing that you spent money, incurred losses, or lost time as a result of the ExecuPharm data breach, you can submit a claim for reimbursement up to $10,000, including up to 5 hours of documented time at $25 per hour (maximum of $125).

  o **Alternative Cash Payment for California Class Members**: If you were a resident of the state of California as of March 13, 2020, you can submit a claim for a one-time payment of $100 in lieu of a claim for reimbursement for Documented Out-of-Pocket Expenses and Lost Time.

  o **Free 3-Bureau Credit Monitoring Services**: You can submit a claim to enroll in three years of free 3-bureau credit monitoring with Identity Defense Total 3-Bureau.

| YOUR LEGAL RIGHTS AND OPTIONS | | DEADLINE |
|---|---|---|
| **SUBMIT A CLAIM FORM TO OBTAIN CASH BENEFITS** | • You must submit a claim form by mail or online in order to receive reimbursement for Out-of-Pocket Expenses and/or Lost Time. | **MONTH DD, 2024** |
| **OBTAIN CREDIT MONITORING** | • You must submit a claim form by mail or online to enroll in three years of free 3-bureau credit monitoring with Identity Defense Total 3-Bureau. | **MONTH DD, 2024** |
| **EXCLUDE YOURSELF** | • Get no Settlement benefits.<br>• Keep your right to sue or continue to sue ExecuPharm for the claims released by the Settlement.<br>• You cannot request to exclude yourself and still object. | **MONTH DD, 2024** |
| **OBJECT** | • Tell the Court why you do not like the Settlement. | **MONTH DD, 2024** |

| | | |
|---|---|---|
| | • You will still be bound by the Settlement if the Court approves it.<br><br>• You may still file a Claim Form for benefits under the Settlement. | |
| **DO NOTHING** | • Get no Settlement benefits. Be bound by the Settlement. | |

The Court will hold a Final Approval Hearing on **Month Day, 2024, at X:XX a.m.** before the Honorable Gerald J. Pappert, U.S. District Court for the Eastern District of Pennsylvania, 11614 U.S. Courthouse, 601 Market Street, Philadelphia, PA 19106, which may be moved to a different location, time or date.

At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate and decide whether to approve: the Settlement, Class Counsel's application for attorneys' fees, costs and expenses, and the service award to Plaintiff. Attorneys' fees and expense requests will be posted on **www.EPSettlement.com** after they are filed with the Court on [**DATE**]. If there are objections, the Court will consider them. The Court will also listen to people who have asked to speak at the hearing.

**THIS IS ONLY A SUMMARY.**

For more information about the settlement and benefits and to submit a claim, visit **www.EPSettlement.com,** call [**PHONE NUMBER**], or write to ExecuPharm Settlement Administrator at [**ADDRESS**].